743 F.2d 481
 84-2 USTC P 13,586
 Valeria REED & Marcella Rouland, Co-Executors of the Estate
of Veronica M. Hancher, deceased, and in behalf of
all others similarly situated,
Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 83-3156.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 6, 1984.
Decided Aug. 24, 1984.
 
 Robert G. Day, Sr., Day & Day, Peoria, Ill., for plaintiffs-appellants.
 Robert S. Pomerance, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.
 Before BAUER, ESCHBACH, Circuit Judges, and JAMESON, Senior District Judge.*
 BAUER, Circuit Judge.
 
 
 1
 Plaintiffs, the executors of the estate of Veronica M. Hancher, seek a refund of $21,513.14 in additional federal estate taxes assessed by the Internal Revenue Service (IRS) against the decedent's estate. The district court denied Plaintiffs' claim for a refund and granted the government's motion for summary judgment. We affirm.
 
 
 2
 Veronica Hancher died on December 2, 1978. On audit of the Federal Estate Tax Return filed by the executors of her estate, the IRS assessed additional taxes on the ground that the executors miscalculated the decedent's total taxable estate. The executors paid the assessment and filed for a refund with the IRS. The IRS disallowed the claimed refund and the present action followed.
 
 I. BACKGROUND
 
 3
 On February 21, 1978, Veronica Hancher made a gift to each of her seven children in the form of a house in Florida. The property was valued at $44,090, which resulted in a gift of $6,298.57 to each child. In preparing the decedent's estate tax return, the executors reflected this transfer as part of the decedent's gross estate as required by the Internal Revenue Code (Code) for gifts made within three years of death. See 26 U.S.C. Sec. 2035 (1979 & Supp.1984). Pursuant to the executors' interpretation of Sec. 2035, however, $21,000 ($3,000 per child) was deducted from the total value of the house. This interpretation employs the "subtraction-out" method under which the first $3,000 of each gift is excluded from the total value of the donor's estate, regardless of the total value of the gift. As a result, only $23,090 out of the property's total $44,090 value was included in the decedent's gross estate. Under this method, the remaining $21,000 value would pass to the transferees untaxed.
 
 
 4
 On audit, the IRS disallowed the $21,000 claimed exclusion. According to the IRS, Sec. 2035 provides for a "de minimus" approach to determining the portion of a gift which may be excluded from a decedent's gross estate. Under this approach, only gifts not in excess of $3,000 are excludable. Because the value of the gift to each child exceeded $3,000, the entire amount of the gift was included by the IRS in calculating the decedent's total estate. The district court held that the IRS properly applied the de minimus method in calculating the decedent's taxable estate. Plaintiffs' first argument on appeal challenges this determination.
 
 
 5
 The second issue raised by Plaintiffs on appeal challenges the method by which the IRS calculated the credit applicable to the decedent's estate for taxes paid on property she inherited from her deceased husband, Andrew Hancher. Andrew pre-deceased Veronica by sixteen months, leaving her property valued at approximately $435,000, of which $336,500 qualified for a marital deduction. Section 2013 of the Code sets out a formula for determining the amount of the allowable credit. Under this section, the value of the property transferred to a decedent is adjusted for taxes and other obligations incurred with respect to the transferor's estate. See 26 U.S.C. Sec. 2013(d) (1979). In calculating Veronica's estate tax, the executors adjusted the value of the property she received by reference to only those taxes and obligations chargeable to the non-marital portion of her inheritance. The credit claimed was $19,366. The IRS allowed only $8,310 of the credit on the ground that all encumbrances relating to Veronica's inheritance, marital as well as non-marital property, had to be deducted from the value of the property she received. The district court upheld the view of the IRS, finding its position supported by the language and intent of Sec. 2013, and sustained its adjustment to the Plaintiffs' claimed credit.
 
 
 6
 The final issue raised by Plaintiffs in this appeal involves whether the decedent's estate is entitled to claim the full amount of the Sec. 2013 credit for the taxes paid on Andrew's estate even though a portion of the tax liability on his estate remained unpaid at the time of the decedent's death. Andrew's estate elected to pay one portion, that of Andrew's son Bernard, in installments over a ten-year period. See 26 U.S.C. Sec. 6166 (1979 & Supp.1984). At the time the decedent's estate tax return was filed, all but Bernard's portion of the tax on Andrew's estate had been paid. Plaintiffs assert that the decedent's estate is entitled to the entire amount of the Sec. 2013 credit because her share of the tax liability had been satisfied by her estate. Conversely, the IRS concluded that Veronica's estate is not entitled to the full credit until the entire tax assessment against Andrew's estate has been collected. The district court held in favor of the IRS noting that the estate can recover the disallowed credit as each installment toward Andrew's tax balance is made. See Rev.Rul. 83-15, 1983-1 C.B. 224.
 
 II. SECTION 2035
 
 7
 Beginning with the Revenue Act of 1916, inter vivos transfers of property made in anticipation of the transferor's death have been subject to estate taxation. This rule was designed to prevent the avoidance of taxation on the full value of a decedent's estate by the transfer of property out of the estate prior to death. See Milliken v. United States, 283 U.S. 15, 20, 51 S.Ct. 324, 326, 75 L.Ed. 809 (1930). Under Code Sec. 2035, the value of any property transferred by the decedent within three years of death is included in the decedent's taxable estate. 28 U.S.C. Sec. 2035(a) (1976). Subsection (b), however, provided an exception to this general rule of inclusion for "any gift excludable in computing taxable gifts by reason of section 2503(b) (relating to $3,000 annual exclusion for purposes of the gift tax)...." Id. Sec. 2035(b)(2). Because Congress later determined that this section created an ambiguity as to when the $3,000 gift exclusion was allowable, this section was amended in 1978 to provide that the subsection (b)(2) exception is applicable only to transfers "made during a calendar year if the decedent was not required by section 6019 to file any gift tax return for such year...." 26 U.S.C. Sec. 2035(b)(2) (1979). See S.Rep. No. 498, 96th Cong., 2d Sess. 86-87, reprinted in 1980 U.S.Code Cong. & Ad.News 316, 395. Accordingly, this section clearly mandates application of the de minimus approach, and thereby requires the entire amount of a pre-death transfer to be included in the gross estate if the value of the gift exceeds the amount designated for the filing of a gift tax return. At the time relevant to this appeal, that amount was $3,000.[1] This amendment, although signed into law on November 6, 1978, was originally given retroactive effect to January 1, 1977. The Technical Corrections Act of 1979 subsequently amended the retroactive date by allowing the election of the subtraction-out method for transfers made during 1977.[2]
 
 
 8
 Plaintiffs first contend that the 1976 version of Sec. 2035 provided for the exclusion of $3,000 per gift, in accordance with the subtraction-out approach. Because this was the provision in effect at the time decedent made the gift to her children, Plaintiffs assert that this approach should be allowed in calculating decedent's gross estate. Plaintiffs argue that Congress enacted the 1978 amendment under the mistaken belief that the 1976 provision adopted the de minimus method and that it intended, through the amendment, only to clarify the language of the section. Thus, Plaintiffs urge us to find the 1978 amendment invalid on the ground that the effect of the provision, a change in the substantive law, was not the result Congress intended. In contrast, the IRS asserts that the 1976 version of Sec. 2035 provided for the de minimus approach and that the 1978 amendment merely clarifies this provision. The district court sustained the view of the IRS to the extent that the plain language of the 1978 amendment provides for the de minimus approach and that its application to decedent's estate was proper.
 
 
 9
 We note initially that Plaintiffs' burden in challenging the validity of a tax provision is substantial. Congress exercises broad discretion in implementing taxes and a strong policy exists against invalidating tax statutes. See Magnano Co. v. Hamilton, 292 U.S. 40, 44, 54 S.Ct. 599, 601, 78 L.Ed. 1109 (1933); Barclay & Co. v. Edwards, 267 U.S. 442, 450, 45 S.Ct. 348, 349, 69 L.Ed. 703 (1924); Danly Machine Co. v. United States, 492 F.2d 30, 33 (7th Cir.1974); Lewis v. Reagan, 516 F.Supp. 548, 553 (D.D.C.1981); DiPortanova v. United States, 690 F.2d 169, 180 (Ct.Cl.1982). Where the language and intent of the statute is clear, courts are without the authority to engage in any creative rewriting of a provision. See Home Mutual Ins. Co. v. Commissioner, 639 F.2d 333, 339, 349 (7th Cir.1980).
 
 
 10
 In deciding this issue, we need look no further than the current statutory language and its relevant legislative history. The language of the 1978 amendment and its history clearly indicates Congress's intention that the de minimus approach be applied in calculating the allowable estate tax exclusion under Sec. 2035. See 28 U.S.C. Sec. 2035 (1979); Joint Committee, 95th Cong., 2d Sess., General Explanation of the Revenue Act of 1978, at 69 (1979). While it may have been the intent of Congress under the 1976 provision to allow the subtraction-out method of computation, the 1978 enactment articulates without question Congress's desire that this method not be employed. See 28 U.S.C. Sec. 2035 (1979); S.Rep. No. 498, 96th Cong., 2d Sess. 86-87, reprinted in 1980 U.S.Code Cong. & Ad.News 316, 395. We find the clear language of the amendment to be controlling, and therefore, determining the proper method of calculation set forth in the 1976 Code, is a task we need not undertake. See Estate of Ceppi v. Commissioner, 698 F.2d 17 (1st Cir.1983) (despite finding subtraction-out method proper under the 1976 Code, court applied de minimus approach retroactively to transfer made January 5, 1978), cert. denied, --- U.S. ----, 103 S.Ct. 3088, 77 L.Ed.2d 1350 (1983). To accept Plaintiffs' assertion that the 1978 amendment is invalid would require this court to substitute its judgment for that of Congress and rewrite the wording of the statute. Indeed, Plaintiffs cite no cases in which a court has invalidated the unambiguous wording of an amendment on the ground that it is contrary to the intent behind the previous taxing provision, and we decline to set such a precedent here. See Renick's Estate v. United States, 687 F.2d 371 (Ct.Cl.1982) (express provisions of Code cannot be disregarded by courts conceiving of fairer interpretation).[3]
 
 
 11
 Plaintiffs' next contention is that the retroactive application of the 1978 amendment is unconstitutional. The IRS asserts that no constitutional infirmity exists in the retroactive application of the amendment and the district court upheld the IRS's view. We agree. A mere change in an existing tax, as opposed to the creation of an entirely new tax, is not unconstitutional per se. See United States v. Darusmont, 449 U.S. 292, 101 S.Ct. 549, 66 L.Ed.2d 513 (1981) (per curiam); Milliken v. United States, 283 U.S. 15, 51 S.Ct. 324, 75 L.Ed. 809 (1931). See also Estate of Ceppi v. Commissioner, 698 F.2d 17 (1st Cir.1983). Retroactive features are applied to revenue statutes as a matter of customary congressional practice. See Darusmont, 449 U.S. at 296-97, 101 S.Ct. at 551-552. Further, as the Milliken Court stated, a taxpayer assumes the risk that the tax burden on a particular transaction may increase pursuant to Congress's continual responsibility to carry out the necessary policies of taxation. 283 U.S. at 23, 51 S.Ct. at 327. In accordance with established precedent, we find no constitutional defect in the retroactive application of the 1978 amendment to Sec. 2035. The amended provision did not create a new tax but rather increased the amount of the gift which would be included in the decedent's gross estate. We do not find this type of change to be so harsh or oppressive as to be invalid. Because the transaction at issue has been taxed since the Revenue Act of 1916, the decedent should have known at the time she made the gift that at least some portion of the home's value would be includable in her estate. This is not a situation in which the taxpayer had no reason to believe that the transaction would be subject to taxation at all, but simply a situation in which the transaction is now being taxed to a greater extent. See Darusmont, 449 U.S. at 298, 300, 101 S.Ct. at 552-553; Cohan v. Commissioner, 39 F.2d 540, 545 (2d Cir.1930).
 
 
 12
 Plaintiffs' reliance on Untermyer v. Anderson, 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645 (1928) and similar cases as dispositive of this appeal is misplaced. See Helvering v. Helmholz, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. 76 (1935); White v. Poor, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80 (1935); Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410 (1929); Blodgett v. Holden, 275 U.S. 142, 48 S.Ct. 105, 72 L.Ed. 206 (1927); Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184 (1927). Each of these cases involved the retroactive application of taxes to irrevocable transfers made prior to enactment of the taxing statute. As explained above, this is not the situation in the present case. We find the cited cases inapplicable where, as here, the transaction in question was clearly subject to taxation at the time made.[4]
 
 III. SECTION 2013
 
 13
 Pursuant to 26 U.S.C. Sec. 2013(a) (1979), a decedent's estate is credited for all or part of the federal estate taxes paid on property transferred to the decedent from the estate of a person who died within the ten years preceding or two years subsequent to the decedent's death. The purpose of this section is to avoid diminution of an estate by successive estate taxation on the same property within a relatively short period of time. See H.R.Rep. No. 1337, 83d Cong., 2d Sess. 90, reprinted in 1954 U.S.Code Cong. & Ad.News 4017, 4452; S.Rep. No. 1622, 83d Cong., 2d Sess. 463, reprinted in 1954 U.S.Code Cong. & Ad.News 4621, 5107. The amount of the credit is an amount "which bears the same ratio to the estate tax paid ... with respect to the estate of the transferor as the value of the property transferred bears to the taxable estate of the transferor ... decreased by any death taxes paid with respect to such estate...." 26 U.S.C. Sec. 2013(b) (1979). This calculation is expressed in the Treasury Regulations by the following equation:
 
 
 14
 value of
 
 
 15
 Sec. 2013 transferred property transferor's adjusted
 = ---------------------- X
credit transferor's adjusted Federal estate tax
 taxable estate
 Treas.Reg. Sec. 20.2013-2 (1958).
 
 
 16
 The credit cannot exceed the amount by which the estate tax owed on decedent's estate is greater than the estate which would have resulted if decedent's estate did not include the transferred property. 26 U.S.C. Sec. 2013(c). In determining the amount of the credit, the value of the property transferred is defined by Sec. 2013(d) as:
 
 
 17
 ... the value used for the purpose of determining the Federal estate tax liability of the estate of the transferor but--
 
 
 18
 (1) there shall be taken into account the effect of the tax imposed by section 2001 or 2101, or any estate, succession, legacy, or inheritance tax on the net value to the decedent of such property;
 
 
 19
 (2) where such property is encumbered in any manner, or where the decedent incurs any obligation imposed by the transferor with respect to such property, such encumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to the decedent of such property was being determined; and
 
 
 20
 (3) if the decedent was the spouse of the transferor at the time of the transferor's death, the net value of the property transferred to the decedent shall be reduced by the amount allowed under Sec. 2056 (relating to marital deductions), as a deduction from the gross estate of the transferor.
 
 
 21
 26 U.S.C. Sec. 2013(d).
 
 
 22
 In calculating the amount of the decedent's Sec. 2013 credit, Plaintiffs reduced the value of the property transferred from her husband's estate by only those taxes and obligations allocable to the non-marital property she received. Because less than one-fourth of the property transferred to the decedent was non-marital property, the subsection (d)(2) reductions were applied to a relatively small portion of her total inheritance. This, in turn, resulted in a larger credit to the decedent's own estate tax. Plaintiffs claim that because the Sec. 2013 credit was designed to account for those taxes previously paid on the transferred property, only those obligations allocable to the taxable portion of transferor's estate should be included. The IRS asserts that Plaintiffs' position is contrary to the language of the statute. The district court sustained the IRS's interpretation.
 
 
 23
 The language of Sec. 2013(d) delineates three distinct categories of adjustments to be made in determining the value of the property transferred to a decedent. The adjustment for the transfer of marital deduction property in subsection (d)(3) appears simply as the third category set out. No reference to marital property appears in either category (d)(1) or (d)(2). Therefore, the plain language of Sec. 2013(d) does not support Plaintiff's contention that the subsection (d)(2) adjustment for encumbrances and obligations applies to non-marital property only.
 
 
 24
 Furthermore, the legislative history behind Sec. 2013 is instructive. The Senate Report discussing the 1954 Code specifically states that the determination of the property's value under Sec. 2013(d) shall take into account "all encumbrances or obligations." S.Rep. 1622 at 467, reprinted in 1954 U.S.Code Cong. & Ad.News at 5111. No distinction is made in this reference between marital and non-marital property. Additionally, the Report states that for purposes of greater certainty, subsection (d) was amended to provide that the value of property transferred to the decedent will be calculated in an identical manner as property passing to a surviving spouse under Sec. 2056, the section providing for the marital deduction. Id. In fact, the wording of Sec. 2013(d) mirrors that of Sec. 2056(b)(4). The Treasury Regulations under Sec. 2056(b)(4) specifically provide that if the property passing to the surviving spouse is subject to a mortgage, encumbrance or other obligation, the value of the property must be reduced by such amount prior to the calculation of the marital deduction. Treas.Reg. Sec. 20.2056(b)-4(b) (1958). Thus, only the net value of the transferee's interest may be used in calculating the marital deduction under Sec. 2056. In the same way, only the net value of the property transferred may be used for purposes of determining the allowable Sec. 2013 credit. Other courts have reached this conclusion as well. See Estate of Sparling v. Commissioner, 552 F.2d 1340, 1345 (9th Cir.1977); Estate of McGauley v. Commissioner, 504 F.2d 1030, 1032 (2d Cir.1974). See also United States v. Stapf, 375 U.S. 118, 84 S.Ct. 248, 11 L.Ed.2d 195 (1963) (interpreting corresponding provision in 1939 Code). Accordingly, we find that the credit allowable under Sec. 2013(d) must be determined by reference to all encumbrances or obligations on the decedent's inherited property, not solely those allocable to non-marital property.
 
 
 25
 Plaintiffs' final contention is that the IRS erred in denying the decedent's estate the full Sec. 2013 credit it claimed on the ground that the entire tax liability on Andrew's estate had not yet been paid. Plaintiffs claim that denying Veronica's estate the full credit is contrary to the statutory language and simply inequitable. The IRS argues that Plaintiffs' interpretation would allow the estate a credit based, in part, on taxes which are yet unpaid and which ultimately may never be paid in the event of a default. To allow the decedent's estate the full credit would effectively shift to the government the risk that the remaining taxes due on Andrew's estate may never be paid. Further, the IRS asserts that any unfairness to decedent's estate is eliminated by the application of Revenue Ruling 83-15, 1983-1 C.B. 224, which allows a decedent's estate to file a protective claim for the remaining amount of the credit due and to collect a refund of the proportionate amount of the credit when each installment payment is made. The district court upheld the position of the IRS and we agree.
 
 
 26
 Plaintiffs argue that because Sec. 2013(a), which provides a credit for "the Federal estate tax paid with respect to the transfer of property ... to the decedent," does not specifically refer to payment of the entire tax due on the transferor's estate, the section requires only that the tax be paid on the property transferred to the decedent. Yet as discussed above, Sec. 2013 credit represents a proportionate amount of the transferor's adjusted federal estate tax. If the transferee's estate is allowed to take a credit based on taxes yet unpaid, the estate might receive a windfall in the event that no tax is eventually collected. Such a result would defeat Congress's intent to collect taxes on every taxable estate except where double taxation would occur on the same property within a relatively short period of time. See Shedd's Estate v. Commissioner, 320 F.2d 638, 640 (9th Cir.1963).
 
 
 27
 Furthermore, we note that Plaintiffs' equity concerns are adequately dealt with under Revenue Ruling 83-15. The ruling protects the interests of both the decedent's estate and the IRS pending satisfaction of the prior tax liability. The decedent's estate is not denied its allowable credit, rather its full entitlement is merely postponed.
 
 IV. CONCLUSION
 
 28
 We hold that the 1978 amendment to Sec. 2035 was a proper exercise of Congress's broad taxing authority and that the retroactive application of the amendment under the Technical Corrections Act of 1979 is constitutional. Further, we hold that Sec. 2013 requires a reduction in the value of property transferred to a decedent by those taxes and expenses attributable to both non-marital and marital deduction property. Finally, the Sec. 2013 credit due to the estate of a transferee may only be taken to the extent that the full tax liability on the transferor's estate has been paid. For the above reasons, we affirm the district court's grant of the government's motion for summary judgment.
 
 
 29
 AFFIRMED.
 
 
 
 *
 The Honorable William J. Jameson, Senior District Judge, United States District Court of Montana, is sitting by designation
 
 
 [1]
 Section 2503(b) was subsequently amended to increase the annual gift tax exclusion to $10,000 per donee for gifts made after December 31, 1981. See 28 U.S.C. Sec. 2503 (Supp.1984)
 
 
 [2]
 The legislative history indicates that this amendment was enacted in response to Congress's view that Sec. 2035 gifts may have been made prior to committee action in 1977 upon the expectation that only the amount in excess of $3,000 would be included in the taxable estate. See S.Rep. No. 498, 96th Cong., 2d Sess. 86-87, reprinted in 1980 U.S.Code Cong. & Ad.News 316, 395
 
 
 [3]
 Additionally, Plaintiffs argue that the 1979 Technical Corrections Act which allowed the election of the subtraction-out method for transfers made during 1977 should be construed to allow the same choice in regard to transfers made during 1978. They contend that the classification distinguishing between gifts made in 1977 and 1978 is arbitrary. Congress has wide latitude, however, to determine whom to tax and it may draw distinctions between similar classes if such distinctions are reasonably related to a legitimate governmental interest. See Barclay & Co. v. Edwards, 267 U.S. 442, 450, 45 S.Ct. 348, 349, 69 L.Ed. 703 (1924); Danly Machine Co. v. United States, 492 F.2d 30, 33 (7th Cir.1974). Committee action on the 1978 amendment began in late 1977, therefore the distinction between transfers made during 1977 and those made in 1978, clearly after committee action had begun, is reasonable
 
 
 [4]
 Finally, Plaintiffs contend that the decedent should not be held to have known of the impending legislative change at the time she made her transfer. This claim is without merit. If personal notice is even relevant to a constitutional challenge, we find that decedent is in fact chargeable with such knowledge on the basis that the 1978 amendment had been under consideration by Congress since October of 1977, one year prior to its enactment and three months prior to the transfer. See United States v. Darusmont, 449 U.S. 292, 299, 101 S.Ct. 549, 553, 66 L.Ed.2d 513 (1981) (per curiam); Estate of Ceppi, 698 F.2d 17, 21-22 (1st Cir.1983)