**ESTATE OF Richard S. EKINS, Deceased, Cora M. Ekins, Executor, and Bank of Wheaton, Trustee and Transferee, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 85–3196.**

United States Court of Appeals, Seventh Circuit.

Argued May 29, 1986.

Decided July 29, 1986.

Roy I. Peregrine, Peregrine, Stime, Newman, Ritzman & Bruckner, Ltd., Wheaton, Ill., for petitioners-appellants.

Joan Oppenheimer, Asst. Atty. Gen., Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent-appellee.

Before BAUER and POSNER, Circuit Judges, and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

The executors of the estate of Richard S. Ekins sought a reconsideration in the United States Tax Court of a deficiency in decedent's tax return as determined by the Commissioner of Internal Revenue. The Tax Court rejected petitioners' argument that retroactive application of the provisions of section 2035 of the Internal Revenue Code of 1954, as amended by the Revenue Act of 1978, was unconstitutional. Petitioners now appeal that holding. For the reasons set out below, we affirm the decision of the United States Tax Court.

## I

The facts of this case are undisputed and straightforward. Richard Ekins died on May 13, 1978 stricken with a heart attack at the age of fifty-one. During the three weeks preceding his death, between March 16 and April 7, 1978, he transferred without consideration five life insurance policies to his wife, Cora Ekins. The total value of the five policies for federal gift tax purposes was $2,241.00. The date of death value of the five policies on May 13, 1978 was $484,611.

In November 1978, seven months after the subject transfer of the insurance policies and six months after Ekins' death, Congress amended Internal Revenue Code § 2035 and made it retroactive to include decedent's transaction. Before the amendment of section 2035, the death value of the five insurance policies would not have been includable in the decedent's gross estate. Section 2035(a) of the Internal Revenue Code of 1954 had provided, as a general rule, that the value of the gross estate for federal estate tax purposes would include the value, to the extent of the decedent's interest therein, of all property transferred by the decedent within three years of his death. Prior to November 1978, section 2035(b)(2) had excepted from the general rule all gifts made by a decedent of less than three thousand dollars. The Revenue Act of 1978, however, amended section 2035(b)(2) to make the exception inapplicable to any transfer with respect to a life insurance policy. The amendment was effective retroactively to estates of decedents after December 31, 1976, except that it would not apply to transfers before January 1, 1977.

After Ekins died, the estate did not include any amount with respect to the five insurance policies in the gross estate reported on decedent's estate tax return. The Commissioner of Internal Revenue ("the Commissioner") issued notices of deficiency and transferee liability to the estate and its representatives, including the date of death value of $484,611.62 in the gross estate as transfers made within three years of decedent's death. Of the total deficiency of $127,104.47, determined by the Commissioner, $117,674.47 was attributable to the inclusion of the insurance policies as part of the estate.

Cora Ekins, executor of her husband's estate, and the trustee, Bank of Wheaton, petitioned the United States Tax Court for a redetermination of the estate, and then on May 13, 1983 filed a motion for summary judgment posing the two issues now raised before this court. The estate first contended that prior to the amendment of section 2035 of the Internal Revenue Code of 1954 by the Revenue Act of 1978, the value of the five life insurance policies would not have been includable in the decedent's gross estate and that Congress acted unconstitutionally in making that amendment effective retroactively to transfers occurring after December 31, 1976. The petitioners next argued that section 2035(a), by requiring inclusion in a decedent's estate of property tranferred by him within three years of death, had the effect of creating an irrebuttable presumption that such transfers were made in contemplation of death and was, therefore, unconstitutional.

On May 29, 1984 the special trial judge entered a memorandum order denying petitioners' motion for summary judgment. Based upon that order and an agreed computation submitted by the parties reflecting settlement of all remaining issues, the United States Tax Court entered a decision determining a deficiency in estate tax due in the amount of $53,212.80. The estate now appeals that decision.

## II

First, this case involves a claim that retroactive application of an amendment to the Revenue Act of 1978, Pub.L. No. 95–600, § 702(f)(2), 92 Stat. ¶¶ 2763, 2930, is unconstitutional. The amendment to section 2035 had the effect of eliminating an exemption for transfers of life insurance policies from the taxable value of a dece-

dent's gross estate.[1] In *Reed v. United States*, 743 F.2d 481, 485 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2673, 86 L.Ed.2d 692 (1985), we specifically found no constitutional defect in the retroactive application of the 1978 amendment to section 2035, and we follow the reasoning of *Reed* in the case before us.

Our starting point is the understanding that the practical problems associated with raising revenue and writing tax legislation have led Congress routinely to give effect to tax statutes prior to the date of enactment. It is a customary congressional practice, usually confined to short and limited periods such as the calendar year, and the Supreme Court has held that considerations of due process are not offended simply because the taxable event antedates the statutes. *United States v. Darusmont,* 449 U.S. 292, 296–97, 101 S.Ct. 549, 551–52, 66 L.Ed.2d 513 (1981). Legislative changes are to be expected, and the taxpayer assumes the risk that the tax burden on a particular transaction may increase pursuant to Congress' continual responsibility to carry out the necessary policies of taxation. *Milliken v. United States,* 283 U.S. 15, 23, 51 S.Ct. 324, 327, 75 L.Ed. 809 (1931).

Based on these reasons, we held in *Reed* that a mere change in an existing tax, which increases the amount of the gift which would be included in a decedent's gross estate, is not so harsh or oppressive to be invalid. *Reed,* 743 F.2d at 485. We dismissed any argument that the decedent in that case should not have been held to have known of the impending legislative change at the time she made her transfer, finding that the decedent was chargeable with such knowledge on the basis that the 1978 amendment had been under consideration for a year prior to enactment and three months prior to the actual transfer. *Id.* at 486 n. 4.

There is only one thought-provoking factual difference in the case before us and *Reed.* There, the petitioner was challenging the 1978 amendment's change in method of determining the portion of a gift which may be excluded from a decedent's gross estate. Under the earlier interpretation, the first $3,000 of each gift had been "subtracted out" of the total value of the estate regardless of the total value of the gift. Under the 1978 amendment, section 2035 provides for a "de minimus" approach to determining the portion of the gift which may be excluded, and only gifts not in excess of $3,000 are excludable.

Because we characterized this method of calculation as a mere change in an existing tax, as opposed to the creation of an entirely new tax, we held in *Reed* that the retroactive application of the 1978 amendment was not unconstitutional *per se.* We reasoned that the decedent should have known at the time she made the gift that at least some portion of the home's value would be includable in the estate, given that the transaction at issue had been taxed since the Revenue Act of 1916. *Reed* was not a situation in which the taxpayer had no reason to believe that the transaction would be subject to taxation, but merely a situation in which the transaction was now being

---

**1.** Under the previous Tax Reform Act of 1976, Section 2035 reads as follows:

(a) Inclusion of Gifts Made by Decedent. Except as provided in subsection (b), the value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, during the 3–year period ending on the date of the decedent's death.

(b) Exceptions. Subsection (a) shall not apply to

     \*     \*     \*     \*     \*     \*

(2) Any gift excludable in computing taxable gifts by reason of section 2503(b) (relating to $3,000 annual exclusion for purposes of the gift tax) determined without regard to section 2513(a).

The 1978 amendments changed section 2035(b) to read as follows:

(b) Exceptions. Subsection (a) shall not apply

     \*     \*     \*     \*     \*     \*.

(2) To any gift to a donee made during a calendar year if the decedent was not required by section 6019 to file any gift tax return for such year with respect to gifts to such donee.

*Paragraph (2) shall not apply to any transfer with respect to a life insurance policy.* (emphasis supplied)

taxed to a greater extent. The transaction in question was clearly subject to taxation at the time it was made.

Thus, in *Reed* it was not necessary to linger over the line of older cases which involved the retroactive application of taxes to irrevocable transfers made prior to enactment of the taxing statute. In those earlier cases, the Supreme Court invoked the Due Process Clause of the fifth amendment to invalidate attempts by the Government to impose new taxes which a taxpayer could not have anticipated before making irrevocable transfers. *See, e.g., Nichols v. Coolidge,* 274 U.S. 531, 542–43, 47 S.Ct. 710, 713–14, 71 L.Ed. 1184 (1927); *Blodgett v. Holden,* 275 U.S. 142, 147, 48 S.Ct. 105, 106, 72 L.Ed. 206 (1927); *Untermyer v. Anderson,* 276 U.S. 440, 445–46, 48 S.Ct. 353, 354, 72 L.Ed. 645 (1927); *Coolidge v. Long,* 282 U.S. 582, 605, 51 S.Ct. 306, 312, 75 L.Ed. 562 (1930).[2]

The policy behind this line of reasoning was that an individual has a legal right to arrange his financial affairs so as to minimize estate taxes upon his death to avoid a harsh burden on his heirs. The leading decision which upheld retroactive application of income tax legislation, *Welch v. Henry,* 305 U.S. 134, 147, 59 S.Ct. 121, 125, 83 L.Ed. 87 (1938), acknowledged the exception for retroactive imposition of a gift tax where the nature of the tax could not reasonably have been anticipated by the taxpayer at the time of the voluntary act which the statute later made a taxable event.

But more recent decisions have narrowly interpreted the reasoning in earlier cases and confined that reasoning to situations where a new tax was created. As the Supreme Court said in *United States v.*

*Hemme,* —— U.S. ——, ——, 106 S.Ct. 2071, 2078, 90 L.Ed.2d 538 (1986): "[*Untermyer's*] authority is of limited value in assessing the constitutionality of subsequent amendments that bring about certain changes in operation of the tax laws, rather than the creation of a wholly new tax." [3] In most instances, however, the application of a tax statute will not amount to a deprivation of property without due process of law if it meets two tests: the change is reasonably foreseeable and is only a fluctuation in the tax rate instead of wholly new tax. *See Darusmont,* 449 U.S. at 299–300, 101 S.Ct. at 553; *Henry,* 305 U.S. at 147, 59 S.Ct. at 125; *Milliken,* 283 U.S. at 23–24, 51 S.Ct. at 327. The two considerations are linked in that a change in the tax rate is considered by its very nature to be reasonably foreseeable, whereas the imposition of a new tax may not be so. *Fein v. United States,* 730 F.2d 1211, 1213 (8th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 188, 83 L.Ed.2d 121 (1984).

■ In the case before us, Congress merely reduced the categories of property eligible for exclusion from the existing estate tax on gifts made within three years of the decedent's death. Thus, it restricted the availability of an estate tax exclusion. Under the Tax Reform Act of 1976, gifts of less than three thousand dollars were exempt from the tax otherwise imposed by section 2035(a). Section 2035(b)(2). The Revenue Act of 1978 modified the exception to make it inapplicable to a transfer of a life insurance policy. This is more analogous to the retroactive increase of the tax base of an already-existing tax approved in *Darusmont* than of the retroactive imposition of a wholly new kind of tax in the early decisions like *Coolidge.* As the

---

**2.** The taxes at issue in these cases were novel developments. For example, *Blodgett v. Holden,* 275 U.S. 142, 47 S.Ct. 710, 71 L.Ed. 1184 (1927), and *Untermyer v. Anderson,* 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645 (1927), concerned retroactive application of the nation's first gift tax.

**3.** Representative of the opinion of the lower courts is the holding of Judge Friendly cited by the Tax Court in its memorandum order: "If Untermyer remains authority at all, it is so only

for the particular situation of a wholly new type of tax there under consideration." *Sidney v. Commissioner,* 273 F.2d 928, 932 (2d Cir.1960). *See also Estate of Ceppi,* 698 F.2d 17, 21 (1st Cir.1983); *Westwick v. Commissioner,* 636 F.2d 291, 292 (10th Cir.1980); *Buttke v. Commissioner,* 625 F.2d 202, 203 (8th Cir.1980), *cert. denied,* 450 U.S. 982, 101 S.Ct. 1517, 67 L.Ed.2d 817 (1981).

Eighth Circuit concluded in *Fein,* 730 F.2d at 1213, considering this precise issue of the constitutionality of the retroactive application of section 2035(b)(2) excluding life insurance policies:

> Nor is this a case of the imposition of a completely new tax. There were estate and gift taxes long before 1977.... The change of which plaintiff complains here is, we think, closer in kind and in effect to a mere increase in the tax rate than to the enactment of a wholly new tax.

Looking at the nature of this tax and the circumstances in which it is laid, we cannot say that its retroactive application is "so harsh and oppressive as to transgress the constitutional limitation." *Henry,* 305 U.S. at 147, 59 S.Ct. at 125. Even if Ekins had refrained from transferring the life insurance policies to his wife, he would not have avoided the estate tax liability in question. Instead, the proceeds of the policies still would have been included in his gross estate under section 2042 of the Internal Revenue Code.[4] Indeed, it was no doubt the hoped-for avoidance of this result which prompted the transfer in the first place. At oral argument, petitioners were not able to offer any convincing beneficial alternatives available to them if they had been furnished advance notice of the change in tax structure. There has been no showing that this statute, without notice, gives a "different and more oppressive legal effect to conduct undertaken before enactment of the statute." *Hemme,* —— U.S. ——, ——, 106 S.Ct. 2071, 2078, 90 L.Ed.2d 538 (1986).

Were we to reverse the United States Tax Court's decision, we would be taking the position that tax exemptions can never be repealed or enacted because of retroactivity. In this case, life insurance policies had been included under estate taxes for a long period; for a short time, they were exempted. Now, Congress has moved to eliminate this exemption for reasons of protection of the Treasury and a more rational collection of revenue. As Justice Brandeis wrote, in his dissent in *Untermyer,* a legislature must be able to spread a tax over a period in advance of its enactment long enough to ensure that the tax will not be evaded by anticipating the passage of the amendment. *Id.* 276 U.S. at 450–51, 48 S.Ct. at 356.

Congress cannot be left powerless to carry out the yearly tinkering with the Code that is necessary to prevent losses of revenue and secure the national fiscal goal. We agree with the United States Tax Court that Congress did not exceed its constitutional authority in making the amendment retroactive to transfers occurring in 1978, and we therefore affirm the Tax Court's decision.

### III

■ Finally, we consider petitioners' argument that section 2035(a) is unconstitutional under the Due Process Clause of the fifth amendment because it has the effect of creating an irrebuttable presumption that all transfers made by the decedent within three years prior to his death were made in contemplation of death and are thus taxable to his estate. Again, we find no merit in the claim.

In two prior cases, *Heiner v. Donnan,* 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932), and *Schlesinger v. Wisconsin,* 270 U.S. 230, 46 S.Ct. 260, 70 L.Ed. 557 (1926), the Supreme Court considered statutes that provided explicitly that where a transfer was made within a certain time period prior to a taxpayer's death, such transfers would be deemed and held to have been made in contemplation of death. The Court held that it could not sustain such a conclusive

---

4. Section 2042. Proceeds of life insurance.

The value of the gross estate shall include the value of all property—

(1) Receivable by the executor.—To the extent of the amount receivable by the executor as insurance under policies on the life of the decedent.

(2) Receivable by other beneficiaries.—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other.

presumption which disregarded the reason for the transfer or the surrounding circumstances. Petitioners argue that section 2035(a) of the 1978 amendments is identical in operation to the earlier statutes struck down by the Court because it rests upon an irrebuttable presumption that these transfers were made as substitutes for decedent's testamentary dispositions. Conceding that the statute in question here does not explicitly state such a presumption, petitioners nevertheless conclude that the statute impermissibly seeks to achieve indirectly that which it could no longer do directly.

To begin with, the Court has so narrowed the early decisions relied on by the petitioners that it is questionable whether the "irrebuttable presumption" doctrine has any continued vitality. Even assuming that the doctrine is still good law, it is inapplicable to section 2035(a) since the statute on its face does not speak in terms of presumptions of fact, rebuttable or otherwise. Although it is true that the congressional goal in originally enacting section 2035 was to reach *inter vivos* transfers of property used as substitutes for testamentary dispositions, *United States v. Wells*, 283 U.S. 102, 116–18, 51 S.Ct. 446, 451–52, 75 L.Ed. 867 (1931), the 1976 amendments deliberately removed the language creating a rebuttable presumption that a transfer made within three years of death was made in contemplation of death. Under the new language of the section, the donor's motive was immaterial.

The impetus for removing the "in contemplation of death" test is clear. Congress was troubled by the inordinate number of lawsuits initiated by taxpayers who attempted to establish life motives for transfers otherwise taxable under the statute. *Hope v. United States*, 691 F.2d 786, 788 (5th Cir.1982), citing H.R. Rep. No. 94–1380, 94th Cong., 2d Sess. 12 (1976), U.S. Code Cong. & Ad. News 1976, pp. 2897, 3366. The statutory change in section 2035 bore a rational relationship to a legitimate congressional purpose: eliminating factbound determinations hinging upon subjective motive. *See Hutchinson v. Commissioner*, 765 F.2d 665, 669 (7th Cir. 1985).

Even after section 2035(a) was first amended in 1976 and the "in contemplation of death" test eliminated, an exception was still left in section 2035(b)(2) for gifts of present interest in property worth less than $3,000. In order to eliminate the ambiguities that arose concerning that exception, Congress amended section 2035(b) again, this time to include a specific exclusion for transfer of a life insurance policy.

Such tinkering with exemptions is a part of fine-tuning a tax policy, and in this case was part of the then-congressional policy of erasing many of the distinctions between transfers during a person's life-time and those after a person's death. We find nothing constitutionally objectionable in the language Congress has employed in rewriting section 2035. On this issue as well, the judgment of the United States Tax Court should be affirmed.