**Bertha Paglin FERMAN, as Executrix of the Estate of Jules J. Paglin**

v.

**UNITED STATES of America.**

**Civ. A. No. 90–1878.**

United States District Court, E.D. Louisiana.

April 20, 1992.

Jack M. Weiss, Steven W. Usdin, Paul O.H. Pigman, David J. Lukinovich, Dorothy Hudson Wimberly, Stone, Pigman, Walth-

---

er, Wittmann & Hutchinson, New Orleans, La., Irving Ferman, Howard University Law School, Washington, D.C., for plaintiff.

Steven Gremminger, U.S. Dept. of Justice, Tax Div., Washington, D.C., John P. Volz, Harry A. Rosenberg, U.S. Attorney's Office, New Orleans, La., for defendant.

## ORDER AND REASONS

ARCENEAUX, District Judge.

Plaintiff, Bertha Paglin Ferman ("Ferman"), as executrix of the estate of Jules J. Paglin, and defendant, the United States of America (the "Government"), filed cross motions for summary judgment and noticed these motions for hearing on April 2, 1992. Having reviewed the memoranda in support, the opposition memoranda, the record, and the applicable law, and having heard the oral argument of counsel, the court now rules.

## FACTS

Plaintiff filed this action on May 25, 1990. In her complaint, Ferman claims that the Internal Revenue Service (the "IRS") owes the Paglin estate a $177,-362.03 refund plus interest and the costs, expenses, and reasonable attorneys' fees incurred in prosecuting this action. The parties have stipulated to the relevant facts.

Congress enacted section 2057 of the Internal Revenue Code (the "Code") as part of the Tax Reform Act of 1986, on October 26, 1986. *See* Tax Reform Act of 1986, Pub.L. No. 99–514, § 1172(a), 100 Stat. 2085, 2513–15. Section 2057 (as originally enacted) provided in pertinent part:

Sec. 2057. Sales of Employer Securities to Employee Stock Ownership Plans or Worker–Owned Cooperatives

(a) General Rule.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate an amount equal to 50 percent of the qualified proceeds of a qualified sale of employer securities.

(b) Qualified Sale.—For purposes of this section, the term "qualified sale" means any sale of employer securities by the executor of an estate to—

(1) an employee stock ownership plan is [sic] described in section 4975(e)(7), or

(2) an eligible worker-owned cooperative (within the meaning of section 1042(c)).

(c) Qualified Proceeds.—For purposes of this section—.

(1) In General.—The term "qualified proceeds" means the amount received by the estate from the sale of employer securities at any time before the date on which the return of the tax imposed by section 2001 is required to be filed (including any extensions).

(2) Proceeds from Certain Securities Not Qualified.—The term "qualified proceeds" shall not include the proceeds from the sale of any employer securities if such securities were received by the decedent—

(A) in a distribution from a plan exempt from tax under section 501(a) which meets the requirements of section 401(a), or

(B) as a transfer pursuant to an option or other right to acquire stock to which section 83, 422, 422A, 423, or 424 applies.

*Id.* § 1172(a), at 2513–14. In essence, this new section to the Code allowed a fifty percent deduction from the gross estate of qualified proceeds resulting from a qualified sale of employer securities to an Employee Stock Ownership Plan ("ESOP"). The new provision took effect upon enactment of the Tax Reform Act of 1986.

Jules J. Paglin died testate on October 27, 1986, in the Parish of Orleans, State of Louisiana. On October 29, 1986, Ferman, as executrix, probated Paglin's will in the Civil District Court for the Parish of Orleans, State of Louisiana. She subsequently qualified as the testamentary executrix in the proceeding styled *Succession of Jules J. Paglin,* No. 86–19726. The decedent also had named Ferman as the primary beneficiary under his will.

Mrs. Ferman characterizes herself as a "sophisticated investor" but also a conservative investor. The parties further stipulate that her testimony would reveal that she and her husband made substantial investments on their own account. In addition, her testimony apparently would establish the she and her husband invested in stocks on occasion but, by 1987, they discontinued further stock investments because of the risk involved.

Mr. Paglin, the decedent, owned shares in over seventy-five publicly traded corporations at the time of his death. In addition, the decedent did not own more than $25,000 worth of stock in any one company—except for 100 shares of ALZA Corporation stock.[1] The estate still owns these shares. Mr. Paglin, however, had no legal relationship to or with the ALZA ESOP at the time of his death.

The IRS issued Notice 87–13 on January 5, 1987, including a specific Question and Answer 23. See Rev.Rul. 87–13, 1987–1 C.B. 20. This notice purported to clarify the interpretation and legislative intent behind section 2057 of the Code pending the enactment of legislation. In so doing, the IRS stated that section 2057 required a decedent to own the ESOP shares prior to his death for the estate to qualify for the fifty percent deduction.

Ferman, in her capacity as executrix of Jules J. Paglin's succession, opened an account on or before February 20, 1987, with Dean, Witter, Reynolds, Inc. ("Dean, Witter") of Palo Alto, California. She deposited $350,000 in cash funds through Jeffrey Traum of Dean, Witter for the purpose of transactions involving Class A common stock of ALZA Corporation.

The trustees of the ALZA ESOP contemporaneously executed three Stock Purchase Agreements for the purchase of Class A common stock of ALZA Corporation on February 20th, 23rd, and 24th of 1987. Pursuant to these contractual undertakings, the trustees purchased approximately 35,700 shares of ALZA Corporation stock from the Estate of Jules J. Paglin on these three dates. The purchases resulted in an aggregate discount to the ALZA ESOP (and loss to the estate) of $49,057.50. The parties stipulate that an ALZA Corporation officer executed the consents required by the Tax Reform Act of 1986 for these transactions to be valid.

The parties also stipulate that Mrs. Ferman arranged for these transactions with one purpose in mind: her attorneys had advised her that, by purchasing and reselling the ALZA Corporation stock to an ESOP, the estate could be entitled to a tax deduction under section 2057 of the Code. Mrs. Ferman, therefore, decided to arrange for these transactions after considering her attorneys' advice and considering the benefits to the estate. She chose the ALZA ESOP because it had agreed to purchase the shares at the lowest discount.

Mrs. Ferman timely filed a United States Estate Tax Return (U.S. Treasury Form 706) on or about July 17, 1987. The decedent's federal estate tax return reflected a total gross estate of $2,786,691.42, with total allowable deductions of $916,852.39, resulting in a taxable estate of $1,869,-839.03. The plaintiff included a check to the IRS for $511,097.55 as the federal estate tax reflected on the return.

The transactions involving the ALZA Corporation stock resulted in reducing the taxable estate from $1,869,839.03 to $1,403,792.78, a reduction of $466,046.25. This reduction in the taxable estate reduced the tax due from $511,097.55 to $333,735.52, resulting in a refund claim of $177,362.03. Mrs. Ferman filed a claim for refund (U.S. Treasury Form 843) on December 15, 1987.

Congress retroactively amended section 2057 of the IRS Code one week later on December 22, 1987. See Omnibus Budget Reconciliation Act of 1987 ("OBRA"), Pub.L. No. 100–203, § 10411, 101 Stat. 1330. In so doing, Congress provided that, for purposes of the fifty percent deduction, a decedent must have owned the stock sold

---

1. The ALZA Corporation is a publicly traded corporation located in Palo Alto, California, and listed on the American Stock Exchange.

to an ESOP by his estate prior to his or her death.[2]

The Internal Revenue Service subsequently disallowed the Paglin estate's refund claim in full by letter dated January 31, 1990. A revenue agent's report dated December 11, 1989, accompanied this letter. In addition, the IRS had issued a private letter ruling on September 22, 1989, that re-affirmed the position taken in Notice 87–13. *See* Priv.Ltr.Rul. 89–52–003, 1989 PRL LEXIS 3088 (Sept. 22, 1989). Mrs. Ferman, therefore, instituted the instant action on behalf of the estate to contest the IRS' ruling and refusal to pay the estate's claimed refund.

Plaintiff, in both moving for summary judgment and opposing the Government's motion, attacks the IRS' refusal to pay the refund on two grounds. Ferman first argues that she fully complied with the plain meaning of section 2057 of the Internal Revenue Code as it existed at the time. The plaintiff next contends that the retroactive amendment of section 2057 as applied to the facts of this case violated the Due Process Clause of the Fifth Amendment to the United States Constitution.

The Government also has moved the court for summary judgment and opposes the plaintiff's motion. In addressing the plain meaning rule, the defendant essential-

ly argues that the plain meaning rule bears no relevance to section 2057's constitutionality. In so arguing, the Government avers that Congress acted within its constitutional powers and did not offend due process by retroactively amending section 2057. Furthermore, the Government posits that, even assuming the plain meaning rule should apply, plaintiff has not met the burden of proving that the IRS misinterpreted or misapplied the statute.

## DISCUSSION

This case presents a novel issue of first and, most likely, last impression. The issue presented is whether the retroactive amendment by Congress of section 2057 of the Tax Reform Act of 1986 violated the Due Process Clause of the United States Constitution. In the court's view, plaintiff simply fails to establish that, under the relevant jurisprudence, a constitutional violation has occurred.

### 1. The Plain Meaning Rule

The court first addresses plaintiff's arguments relative to the plain meaning rule. In so doing, the court finds these arguments persuasive but, as discussed below, not persuasive enough to overcome the prevailing jurisprudence.

---

**2.** The retroactive amendment to section 2057 stated, in relevant part:

Sec. 10411. Congressional Clarification of Estate Tax Deduction for Sales of Employer Securities.

(a) Intent of Congress in Enacting Section 2057 of the Internal Revenue Code of 1986.—Section 2057 (relating to sales of employer securities to employee stock ownership plans or worker-owned cooperatives) is amended by redesignating subsections (d), (e), and (f) as subsections (e), (f), and (g), respectively, and by inserting after subsection (c) the following new subsection:

(d) Qualified Proceeds from Qualified Sales.—

(1) In General.—For purposes of this section, the proceeds of a sale of employer securities by an executor to an employee stock ownership plan or an eligible worker-owned cooperative shall not be treated as qualified proceeds from a qualified sale unless—

(A) the decedent directly owned the securities immediately before death, and

(B) after the sale, the employer securities—

(i) are allocated to participants, or

(ii) are held for future allocation in connection with—

(I) an exempt loan under the rules of section 4975, or

(II) a transfer of assets under the rules of section 4980(c)(3).

(2) No Substitution Permitted.—For purposes of paragraph (1)(B), except in the case of a bona fide business transaction (e.g., a substitution of employer securities in connection with a merger of employers), employer securities shall not be treated as allocated or held for future allocation to the extent that such securities are allocated or held for future in substitution of other employer securities that had been allocated or held for future allocation.

(b) Effective Date.—The amendments made by subsection (a) shall take effect as if included in the amendments made by section 1172 of the Tax Reform Act of 1986.

Omnibus Budget Reconciliation Act of 1987, Pub.L. No. 100–203, § 10411, 101 Stat. 1330.

The rules of statutory construction treat tax statutes no differently than any other legislative enactment. *See generally* 1 Joseph Rasch, *Handling Federal Estate and Gift Taxes* § 1:6 (4th ed. 1984) (discussing principles involved in interpreting estate tax legislation). Plaintiff properly instructs the court that, if it finds a statute's terms to be unambiguous, the "plain meaning rule" requires courts to give statutes their ordinary meaning unless such ordinary meaning leads to absurd results. *Bob Jones Univ. v. United States*, 461 U.S. 574, 586, 103 S.Ct. 2017, 2025, 76 L.Ed.2d 157 (1983). Ferman also correctly points out the clear and unambiguous language of the former section 2057. This section required no interpretation and its clarity precludes the use of Congressional legislative history to fathom its meaning.[3]

▪ The IRS' interpretation of section 2057 in Notice 87–13 does not appear to be inconsistent with Congress' intent at the time of its original enactment and clearly comports with the subsequent amendment. But, where a court finds a statute's language clear and unambiguous, it is error to resort to legislative history to explain it. *See United States v. American Trucking Assns.*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940); *United States v. Northumberland Ins. Co.*, 521 F.Supp.

70, 76 (D.N.J.1981). The court finds that, without resorting to section 2057's legislative history, Ferman complied with the former section 2057's provisions to qualify the Paglin estate for the fifty percent deduction. This finding, however, does not end the court's analysis.

### 2. Retroactivity and Due Process

The plaintiff's second and final attack on section 2057 argues that Congress' retroactive amendment to this section violated her due process rights. Ferman, however, fails to sustain such contention under the relevant jurisprudence.

▪ The parties have supplied the court with the unpublished decision of the only other federal court known to have considered this specific issue. In *Carlton v. United States*, No. 90–685 (C.D.Cal. Apr. 15, 1991), the U.S. District Court for the Central District of California held that the retroactive amendment to section 2057 did not violate due process and granted summary judgment in favor of the government.[4] While not controlling, the court finds no error in the *Carlton* court's analysis.

The relevant jurisprudence instructs this court that "the application of a tax statute will not amount to a deprivation of proper-

---

**3.** It is interesting to note that at least one senator's views apparently lend credence to the IRS' position in Notice 87–13. Senator Russell Long, Finance Committee Chairman, a most vigorous advocate of ESOPs and generally regarded as the author of the concept contained in section 2057, noted during the Senate's debate:

> The amendment allows an exclusion from an estate for 50 percent of the proceeds realized on an estate's sale of stock to an ESOP, thereby allowing an executor to reduce taxes on an estate by one-half by selling *the decedent's company* to an ESOP or worker owned cooperative.... This amendment should encourage sales of companies to employee stock ownership plans. In addition, it should help reduce estate taxes. The only real purpose of the estate tax is to break up large accumulations of capital. Tax relief is appropriate for the estates of those who assist others in accumulating capital—*particularly when they help those who helped them accumulate that capital.*

132 Cong.Rec. 14,507 (1986) (statement of Sen. Long) (emphasis added). Senator Long's state-

ment lends substantial credence to the IRS' interpretation of section 2057. By referring to "the decedent's company", the senator indicates legislative intent for a decedent to own the subject stock prior to his death for his estate to claim the deduction.

Of course, it is likewise arguably correct that Mrs. Ferman's conduct furthered the purpose of the statute by helping "those who helped them accumulate that capital." By her purchases, she reduced the number of outstanding "marketplace" shares of ALZA Corporation stock and caused these shares to be acquired by the ESOP. This result certainly appears to satisfy the intent behind section 2057 as well.

**4.** The court notes that the plaintiff in *Carlton* voiced other objections to the amendment including violations of the Contract and Takings Clauses of the United States Constitution. Ferman, in this case, has not raised such issues, but, even if she had, the court would have found them to be unpersuasive for the reasons expressed in the *Carlton* decision.

ty without due process of law if it meets two tests: the change is reasonably foreseeable and is only a fluctuation in the tax rate instead of a wholly new tax." *Estate of Ekins v. Commissioner*, 797 F.2d 481, 484 (7th Cir.1986) (*citing United States v. Darusmont*, 449 U.S. 292, 299–300, 101 S.Ct. 549, 553–554, 66 L.Ed.2d 513 (1981); *Welch v. Henry*, 305 U.S. 134, 147, 59 S.Ct. 121, 125, 83 L.Ed. 87 (1938); *Milliken v. United States*, 283 U.S. 15, 23–24, 51 S.Ct. 324, 327–328, 75 L.Ed. 809 (1931)). The net effect of the jurisprudence interpreting retroactive tax statutes undermines Ferman's position.

Plaintiff may have followed the plain and ordinary construction of section 2057 as originally enacted, but the court finds strong, indeed virtually unanimous, support for retroactive application of tax statutes. *See Darusmont*, 449 U.S. at 296, 101 S.Ct. at 551; *Welch*, 305 U.S. at 146–50, 59 S.Ct. at 125–127; *Milliken*, 283 U.S. at 24, 51 S.Ct. at 327; *see also* 2 Norman A. Singer, *Sutherland Statutory Construction* § 41.10 (4th ed. 1986) (noting validity of retroactively-applied tax statutes). Neither party contests that Congress, by its 1987 amendment to section 2057, did not intend to limit the sales of stocks to ESOPs and make such limitation retroactive. The question, therefore, becomes whether such retroactive intent and application violated the plaintiff's constitutional rights.

Ferman initially contends that she could not have foreseen Congress' retroactive amendment of section 2057 because no legislative action took place until after she completed the stock transfers at issue. The foreseeability of this tax statute turns on the first instance where plaintiff knew or should have known of the impending change in section 2057. The Government obviously argues that Notice 87–13 (published the month before plaintiff engaged in the relevant transactions) provided Mrs. Ferman with ample notice of section 2057's practical application.

Notice 87–13 forewarned what the future could and ultimately did bring. While the IRS cannot legislate, its pronouncements as to the application of tax laws deserve deference. *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948); *see* Singer, *supra*, § 66.04. The contention that Notice 87–13 failed to present the plaintiff with the IRS' (or, prospectively, Congress') intended interpretation of section 2057 is unpersuasive. It would seem abundantly clear that, given the IRS' position, Congress would enact corrective and retroactive legislation at the earliest possible time.

The Supreme Court, however, has expressed some doubt that foreseeability should even be a relevant consideration in the due process analysis of retroactive legislation. *See Pension Benefit Guar. Corp. v. Gray & Co.*, 467 U.S. 717, 731–32, 104 S.Ct. 2709, 2718–19, 81 L.Ed.2d 601 (1984); *Darusmont*, 449 U.S. at 299, 101 S.Ct. at 553. The U.S. Court of Appeals for the Seventh Circuit in *Estate of Ekins* specifically noted that foreseeability must be linked to whether the retroactive legislation changed the tax rate or added a new tax. 797 F.2d at 484. In this case, the court is unable to find that, as a matter of law, the retroactive legislation at issue created a new tax.

While the net effect of the 1987 amendments to section 2057 clearly denied the Paglin estate the benefits of the fifty percent deduction, such denial did not amount to a "new tax" as contemplated by the relevant law. The estate tax and, in particular, section 2057 existed prior to the retroactive legislation in dispute. Congress merely changed the benefits conferred by this particular provision and made such change retroactive.

Plaintiff responds that such retroactivity resulted in a harsh and oppressive effect on her and deprived her of expected tax benefits. In supporting this contention, Ferman relies on cases such as *Untermyer v. Anderson*, 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645 (1928), and *Blodgett v. Holden*, 275 U.S. 142, 48 S.Ct. 105, 72 L.Ed. 206 (1927), where the Supreme Court struck down the taxing gifts made prior to enactment of the legislation as arbitrary and capricious. She further distinguishes retroactive application of tax statutes in es-

tate tax cases from income tax cases. In essence, plaintiff contends that, because the estate's right to the fifty percent deduction "vested" prior to Congress Congress even considering section 2057's amendment, retroactive application of this legislation would violate due process.

The opinions in *Milliken* and *United States v. Hemme*, 476 U.S. 558, 106 S.Ct. 2071, 90 L.Ed.2d 538 (1986), however, teach this court otherwise. In *Milliken*, the Court apparently confines *Untermyer* to the particular facts of that case and only where a new tax has been created. *See Milliken*, 283 U.S. at 21, 51 S.Ct. at 326; *Estate of Ekins*, 797 F.2d at 484. In *Hemme*, the Supreme Court specifically stated that "[*Untermyer's*] authority is of limited value in assessing the constitutionality of subsequent amendments that bring about certain changes in operation of the tax laws, rather than creation of a wholly new tax." 476 U.S. at 568, 106 S.Ct. at 2077. The *Hemme* opinion (and numerous others), therefore, place into question the usefulness of *Blodgett* and *Untermyer* and, in this case, the plaintiff's reliance on this jurisprudence for support.

■ The court, even assuming arguendo that *Blodgett* and *Untermyer* stand for persuasive statements of law in estate taxation and the "vesting" of certain rights, finds such jurisprudence distinguishable. In *Blodgett* and *Untermyer*, Congress sought to enact a completely new estate tax on intervivos gifts. *Untermyer*, 276 U.S. at 444, 48 S.Ct. at 354; *Blodgett*, 275 U.S. at 146, 48 S.Ct. at 106. This case, however, does not involve a new estate tax on intervivos gifts but, rather, a change in the application of an estate tax deduction. This court, therefore, cannot find Congress' retroactive enforcement of section 2057's amendment to have been arbitrary or capricious and, as a result, to have been a deprivation of property without due process. *See Hemme*, 476 U.S. at 568, 106 S.Ct. at 2077; *Darusmont*, 449 U.S. at 299, 101 S.Ct. at 553; *Milliken*, 283 U.S. at 20–22, 51 S.Ct. at 326–327. For this reason, Ferman's arguments relative to the estate's "vested" right in the fifty percent deduction founder on the rocks of Supreme Court case law.

The United States Constitution and jurisprudence interpreting it clearly permit Congress to legislate rationally in establishing a tax revenue base. Indeed, the Supreme Court apparently has accepted that

> it long has been the practice of Congress to make [income tax statutes] ... retroactive for relatively short periods so as to include profits from transactions consummated while the statute was in process of enactment, or within so much of the calendar year as preceded the enactment; and repeated decisions of this Court have recognized this practice and sustained it as consistent with the due process of law clause of the Constitution.

*United States v. Hudson*, 299 U.S. 498, 499, 57 S.Ct. 309, 309, 81 L.Ed. 370 (1937) (citations omitted). The *Hudson* case involved income taxes rather than estate taxes, but the Court's endorsement of retroactive legislation to change existing taxes applies with equal force.

Under the circumstances, neither Ferman's expectations nor the actual undertaking of the stock transactions amounted to a "vesting" of any right in this particular tax benefit or a subsequent violation of her due process rights. For this reason, the court finds her arguments relative to such due process violation to be unpersuasive.

## CONCLUSION

The court sympathizes with and is instinctively inclined towards the position advocated by the plaintiff. It seems fundamentally wrong for federal taxing authorities to be permitted a retroactive application of a tax in the face of the clear and unambiguous language of a statute. It may well be true that Congress, perhaps inadvertently, made a mistake. The error may have occurred in the drafting process, but neither its origin or source should be relevant in considering an unambiguous choice of statutory language. In any event, it is true beyond peradventure that Congress may surely correct any error or inadvertence it may have created; indeed, Congress is constitutionally able to change and modify our nation's tax laws at will.

But, granting such amendments retroactive effect in such a way as to adversely

affect completed conduct by a citizen smacks of totalitarianism through taxation. It seems fundamentally wrong for Congress to be permitted to make any of its pronouncements retroactive to the detriment of even one citizen for even one moment.

Such circumstance, however, seems to be the law and, while this court disagrees with it, it is nonetheless bound by it. It is therefore with duty-bound distaste that the court finds the Government's motion for summary judgment must be granted and the plaintiff's motion denied.

In all candor, the court, in this instance, sincerely hopes that, should its judgment be appealed, the court (or courts) above will find error in this ruling. Thus, in accepting the Government's argument that the language in section 2057's 1986 version may be explained by inadvertence and error, this court opines the hope that the appellate courts might treat this court's ruling in a similar way; that is, while not inadvertent, the ruling is nonetheless in error.

For the reasons herein, the plaintiff's motion for summary judgment is hereby DENIED, and the defendant's motion for summary judgment is hereby GRANTED. Judgment shall be entered accordingly.

IT IS SO ORDERED.