ESTATE OF CAROL M. McNAMEE, DECEASED, ANTHONY C. MORICI, JR., EXECUTOR, AND THE CAROL M. McNAMEE TRUST AGREEMENT, DATED OCTOBER 12, 1981, ANTHONY C. MORICI, JR., AND EILEEN McNAMEE, TRUSTEES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of McNamee v. Commissioner
Docket No. 8789-91
United States Tax Court
T.C. Memo 1994-322; 1994 Tax Ct. Memo LEXIS 329; 68 T.C.M. (CCH) 86; July 14, 1994, Filed *329 Decision will be entered for respondent. For petitioner: David W. Hettig and Charles C. Marson. For respondent: Stephen R. Asmussen. RAUM
RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined an estate tax deficiency of $ 1,250,490 against the decedent Carol M. McNamee's estate. Primarily at issue is the constitutionality of a retroactively amended provision of section 2057, in respect of a claimed estate tax deduction based upon the estate's purchases of stock in an employer corporation and resale of the stock to that employer's Employee Stock Ownership Plan (ESOP), where the decedent did not own that stock immediately before death. [1]
The decedent, Carol M. McNamee, died November 19, 1986, a resident of California. Anthony C. Morici (Morici), the brother of the decedent and executor of her will, was at all relevant times also co-trustee of the decedent's revocable trust. *330 The decedent's daughter Eileen McNamee (Eileen) is the other co-trustee. Both co-trustees resided in California at the time the petition was filed. [2]
Shortly prior to the decedent's death, Congress on October 22, 1986, enacted the Tax Reform Act of 1986 (TRA), Pub. L. 99-514, 100 Stat. 2085. Section 1172 of that Act was codified in the Internal Revenue Code as section 2057. Pertinent portions of the originally enacted version of section 2057 of the Code are set forth in the margin. [3]Section 2057 permitted estates to deduct for Federal estate tax purposes *331 an amount equal to 50 percent of the gross proceeds received from the sale of employer securities to an ESOP. Under the original version of section 2057 in effect at the date of the decedent's death, the 50-percent deduction was applicable to all of the proceeds of such sales as long as the sales were effected "at any time before the date on which the return of tax imposed by section 2001 [i.e., the Federal estate tax] is required to be filed (including any extensions)." Sec. 2057(c)(1). The original version of the statute did not by its terms preclude an estate from qualifying for the deduction even though the decedent did not own the stock at the time of death, as long as the stock was purchased and sold prior to the filing date for the estate tax return. *332 The decedent died testate on November 19, 1986. Her will was admitted to probate in the Superior Court of California, Santa Clara County. At the time of her death, all of her assets that were not held in her revocable trust or passed directly to the decedent's daughters under beneficiary designations (e.g., insurance policies), were administered in the probate proceedings. At the time of her death, the decedent did not own any securities in ALZA Corporation (ALZA), the stock of which was publicly traded. After the decedent's death, petitioners, acting in their fiduciary capacities, decided that it would be in the best interest of the estate to take advantage of the ESOP deduction under section 2057 as enacted in 1986 and in effect at that time. On or around February 12, 1987, petitioners opened an account at Dean, Witter, Reynolds, Inc. (Dean Witter), in Palo Alto, California, for the sole purpose of purchasing Class A Common Stock in ALZA, which was listed on the American Stock Exchange. During the next 14 days, petitioners deposited funds (obtained from the revocable trust) in the Dean Witter account, and made purchases of Class A Common Stock of ALZA for immediate resale *333 to the ALZA ESOP. Petitioners, on behalf of the estate, in fact resold the stock to the ALZA ESOP at a discount on the same respective days at private sale. Such purchases and sales for each day are summarized as follows: Actual
Number of Total Purchase
Net Proceeds
Trade Date
Shares Purchased
Price of Sale 02/12/87
25,000
$   704,925.00
$   667,303.75
02/13/87
25,000
706,250.00
675,600.00
02/17/87
25,000
717,500.00
686,400.00
02/18/87
25,000
736,875.00
712,343.00
02/19/87
25,000
718,237.50
694,265.38
02/25/87
25,000
728,462.50
711,688.25
02/26/87
25,000
746,375.00
729,487.50
Totals
175,000
5,058,625.00
4,877,087.88
In making the purchases, petitioners relied on tax benefits that they expected to realize by reason of the application of section 2057 as in effect on the dates of purchase. They made these purchases and sales in the exercise of their fiduciary duties and solely for the purpose of availing themselves of the substantial estate tax deduction they believed was available under I.R.C. section 2057. The decedent's Estate Tax Return (Form 706) was timely filed on February 17, 1988. On the return, the estate claimed an "ESOP *334 deduction" of $ 2,438,544, i.e., 50 percent of the proceeds received from the sale of the ALZA stock to the ALZA ESOP. Prior to petitioners' purchases and sales of ALZA stock and prior to the filing of the estate's return, the IRS on January 5, 1987, issued an advance version of Notice 87-13. Question and Answer No. 23 of Notice 87-13 stated, inter alia, that "pending the enactment of clarifying legislation," the IRS would not recognize a section 2057 deduction unless the decedent had "directly owned" the securities before death. Notice 87-13 was formally published on January 26, 1987, in the Internal Revenue Bulletin at 1987-4 I.R.B. 14. The parties have stipulated that petitioners were, through advice of legal counsel, aware of the existence and legal significance of Notice 87-13 at the time they purchased and sold the blocks of ALZA stock to the ALZA ESOP in February 1987. On February 26, 1987, bills were simultaneously introduced in both houses of the new 100th Congress to enact into law the decedent ownership requirement as contained in Notice 87-13. The bills became law on December 22, 1987, when Congress enacted section 10411 of the Omnibus Budget *335 Reconciliation Act of 1987 (OBRA), Pub. L. 100-203, 101 Stat. 1330-432, 1330-433. That provision amended section 2057 of the Code to incorporate the decedent ownership requirement referred to in Notice 87-13. After amendment by OBRA section 10411, 101 Stat. at 1330-432, subsection (d) of section 2057 read in pertinent part as follows: (d) Qualified Proceeds From Qualified Sales. -- (1) In general. -- For purposes of this section [2057], the proceeds of a sale of employer securities by an executor to an employee stock ownership plan * * * shall not be treated as qualified proceeds from a qualified sale [i.e., as proceeds eligible for the estate tax deduction] unless -- (A) the decedent directly owned the securities immediately before death, * * *
Under the effective date provision of the OBRA amendment, the changes to section 2057 were to be given retroactive effect dating back to the original enactment of section 2057 in 1986. [4]
*336 Petitioner Morici, as executor of the decedent's estate, subsequently received a notice of deficiency, in which the Commissioner determined a Federal estate tax deficiency of $ 1,250,490, all of which was attributable to the ESOP sales deduction claimed under section 2057. The Commissioner's deficiency notice stated as follows: It has been determined that the sale of subject stock, purchased after the date of death, to Alza [sic] ESOP for $ 4,877,089 in February 1987 did not qualify for the deduction of one-half (1/2) of the net proceeds.
The estate has contested the deficiency on the ground that the retroactive application of the amendment to section 2057 is an unconstitutional violation of due process of law. We must reject that contention. The estate has relied upon Carlton v. United States, 972 F.2d 1051 (9th Cir. 1992), which, it argued on brief, was "dispositive and controlling", and it characterized the facts of that case as "virtually identical" with those here. Subsequent to the submission of the case the parties jointly advised us, that which we already knew, that the Supreme Court had granted the Government's petition for certiorari *337 in Carlton. We refrained from deciding this case pending the final disposition of Carlton. The Supreme Court on June 13, 1994, unanimously reversed the Ninth Circuit and sustained the constitutionality of the retroactive provisions of the amendatory legislation. United States v. Carlton, 512 U.S.     (1994). [5]
*338 In the circumstances we have no alternative other than to decide this case against petitioner. Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at the date of decedent's death.↩
2. The trust as well as the estate itself are petitioners herein. It is puzzling how the trust can be a petitioner since the deficiency notice was addressed solely to the estate. However, no issue has been raised in this respect, and since the parties have treated the actions of the trust to be equivalent to those of the estate itself, we do the same for purposes of this case. For convenience, Morici and Eileen will sometimes be referred to as petitioners.↩
3. The pertinent portions of sec. 2057 as originally enacted read as follows: SEC. 2057. SALES OF EMPLOYER SECURITIES TO EMPLOYEE STOCK OWNERSHIP PLANS OR WORKER-OWNED COOPERATIVES. (a) General Rule. -- For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate an amount equal to 50 percent of the qualified proceeds of a qualified sale of employer securities. (b) Qualified Sale. -- For purposes of this section, the term "qualified sale" means any sale of employer securities by the executor of an estate to -- (1) an employee stock ownership plan is [sic] described in section 4975(e)(7), * * *
(c) Qualified Proceeds. -- For purposes of this section -- (1) In general. -- The term "qualified proceeds" means the amount received by the estate from the sale of employer securities at any time before the date on which the return of the tax imposed by section 2001 is required to be filed (including any extensions).↩
4. Sec. 10411(b) of the Omnibus Budget Reconciliation Act (OBRA), Pub. L. 100-203, 101 Stat. 1330-433 of 1987, states as follows: (b) Effective Date. -- The amendments made by subsection (a) [of OBRA sec. 10411] shall take effect as if included in the amendments made by section 1172 of the Tax Reform Act of 1986.↩
5. There was also pending before the Supreme Court a petition for certiorari to the Court of Appeals for the Fifth Circuit in Ferman v. United States, No. 93-569, October Term, 1993, where the Fifth Circuit had reached a decision opposite to that of the Ninth Circuit. However, the Fifth Circuit distinguished its case on the ground that the executor in Carlton entered into the transactions "nearly one month before the IRS issued Notice 87-13", whereas in Ferman, Notice 87-13 was formally published "nearly a month before Ferman [the executor] entered into the series of transactions at issue". Ferman v. United States, 993 F.2d 485, 490-491 (5th Cir. 1993), affg. Ferman v. United States, 790 F.Supp. 656 (E.D. La. 1992). The Government's brief in opposition to the petition for certiorari argued that the petition should be denied or held in abeyance pending the Court's decision in Carlton. The Supreme Court in fact did hold the petition in abeyance and denied it on June 20, 1994, 1 week after its decision in Carlton, 512 U.S.    ↩ (1994).