**Lavere C. SENFT, Administrator of the Estate of Elmer J. Writer, Appellant,**

v.

**UNITED STATES of America.**

**No. 14099.**

United States Court of Appeals Third Circuit.

Argued Feb. 7, 1963.

Decided June 29, 1963.

Harry J. Rubin, York, Pa., for appellant.

Edward L. Rogers, Dept. of Justice, Tax Division, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, L. W. Post, Attys., Dept. of Justice, Washington, D. C., Bernard J. Brown, U. S. Atty., Daniel R. Minnick, Asst. U. S. Atty., on the brief), for appellee.

Before KALODNER, STALEY and SMITH, Circuit Judges.

KALODNER, Circuit Judge.

Is the descent of property to a state under its intestacy laws a transfer of such property within the meaning of Section 2055(a) of the Internal Revenue Code of 1954,[1] which provides, in effect, for the exemption from federal estate taxes "of all bequests, legacies, devises, or transfers * * * "to or for the use of * * * any State * * *"?

The District Court answered the question in the negative [2] and this appeal followed. The issue is one of first impression.

The relevant undisputed facts are:

Elmer J. Writer died intestate May 23, 1957, in York, Pennsylvania. He was not survived by any relative to whom his estate would descend under Pennsylvania's intestacy laws, and pursuant to the provisions of Section 3 of the Act of April 24, 1947, P.L. 80, as amended, 20 P.S. § 1.3(6), his entire estate descended to the Commonwealth of Pennsylvania. The plaintiff administrator of Writer's estate, Lavere C. Senft, paid $18,474.86

in federal estate tax and interest and when his claim for refund was disallowed he filed his complaint in the instant action, under 28 U.S.C.A. § 1346. Both in his claim for refund and in the District Court the plaintiff contended that in determining the value of the taxable estate the estate was entitled to a charitable deduction pursuant to Section 2055(a) of the 1954 Code. The District Court granted the Government's motion for summary judgment [3] on its view that the statutory language, the legislative history, and applicable Treasury Regulations, as well as relevant case law, compelled the conclusion that property descending to the Commonwealth under the Pennsylvania Intestate Act cannot be construed as property " 'transferred by decedent during his lifetime or by will * * * to or for the use of * * * any State.' "[4] 202 F.Supp. 840.

The thrust of the plaintiff's vigorous contention on this appeal is that the word "transfers" in Section 2055(a) "encompasses transfers by operation of law", and "the statutory purpose in permitting a deduction for transfers to public bodies is not transgressed by permitting a deduction in this case".

The sum of the Government's position is that "transfers" within the meaning of Section 2055(a) are limited to a voluntary transfer, testamentary in character, made by the decedent in his lifetime.

Section 2001 of the 1954 Code [5] provides for imposition of an estate tax "on the transfer of the taxable estate, determined as provided in section 2051, of every decedent * * *."

Section 2055 "Transfers for public, charitable, and religious uses", provides in relevant part:

"(a) In General.—For purposes of the tax imposed by section 2001, the

---

1. 26 U.S.C.A. § 2055.

2. Senft v. United States, 202 F.Supp. 838 (E.D.Pa.1962).

3. The District Court's Judgment provided for a $2,000.00 allowance of counsel fees and expenses to plaintiff.

4. Treasury Regulations on Estate Tax (1954 Code), § 20.2055–1.

5. 26 U.S.C.A. § 2001.

value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all *bequests, legacies, devises, or transfers* * * *

"(1) to or for the use of the United States, *any State*, Territory, or any political subdivision thereof, or the District of Columbia, for exclusively public purposes;

"(2) to or for the use of any corporation organized and operated exclusively for *religious, charitable, scientific, literary, or educational* purposes, * * *." (emphasis supplied)

Treasury Regulations Sec. 20.2055–1 "Deductions for transfers for public, charitable, and religious uses; in general" provide:

"(a) General rule. A deduction is allowed under section 2055(a) from the gross estate of a decedent who was a citizen of the United States at the time of his death for the value of property included in the decedent's gross estate and *transferred*

*by the decedent during his lifetime or by will—*

"(1) To or for the use of the United States, *any State*, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes;" (emphasis supplied)

The quoted Treasury Regulation has, in substantially the same terms, been in effect since 1921 when Treasury Regulations 63 [6] was promulgated following the enactment of Section 403(a) (3) of the Revenue Act of 1921,[7] which allowed a deduction for "[t]he amount of all bequests, legacies, devises, or *transfers* * * * to or for the use of the United States, any State, * * * for exclusively public purposes, * * *." (emphasis supplied).

In the predecessor Section 403(a) (3) of the Revenue Act of 1918 [8] the deduction was allowed [9] for "[t]he amount of all bequests, legacies, devises, or *gifts* * * *." (emphasis supplied) The substitution of the word "transfers" in the 1921 Act for the word "gifts" in the 1918 Act, according to the legislative history, was to make it clear that gifts

---

6. Treasury Regulations 63 (1921 Act) provided:

"Art. 47. Transfers for public, charitable, religious, etc. uses.—In the estates of decedents dying after December 31, 1917, deduction may be taken of the value of all property *transferred by will, or by the decedent in his lifetime* in contemplation of or intended to take effect in possession or enjoyment at or after his death (not including, however, the value of property sold for a fair consideration in money or money's worth), where, in either case, the property is, or has been, transferred (1) to or for the use of the United States, any State, * * *" (emphasis supplied)

For substantially identical language with that above in subsequent Regulations, see Article 44 of Treasury Regulations 68 (1924 Act), 70 (1926 ed. and 1929 ed.) and 80 (1934 ed. and 1937 ed.); Section 81.44 of Treasury Regulations 105 (1939 Code). Similarly, the earliest Regulations on the subject, Article 53 of Treasury Regulations 37 (1918 Act), after discussing the deductibility of chari-

table bequests and devises, provided that: "Gifts made in the decedent's lifetime are deductible only if made in contemplation of death, or intended to take effect at or after death, and the property is consequently included in the gross estate."

7. Section 403(a) (3) of the Revenue Act of 1921, c. 136, 42 Stat. 227 provided: "The amount of all bequests, legacies, devises, or *transfers*, except bona fide sales for a fair consideration in money or money's worth, in contemplation of or intended to take effect in possession or enjoyment at or after the decedent's death, to or for the use of the United States, any State, * * * for exclusively public purposes, * * *." (emphasis supplied)

8. c. 18, 40 Stat. 1057, 1096.

9. While the history of Federal estate taxation dates back to the Revenue Act of 1916, c. 463, 39 Stat. 756, 200–212, the first provision for deductions with respect to public or charitable "bequests, legacies, devises, or gifts" was made in the Revenue Act of 1918.

made during a decedent's life could not be deducted unless they were includible in his gross estate.[10]

The phrase "bequests, legacies, devises and transfers" has been reenacted by Congress in all estate tax legislation since the 1921 Act.

The word "gifts" as used in the 1918 Act and the word "transfers" used in later revenue acts have been construed in their setting by the Supreme Court of the United States and given identical effect.

In the leading case of Young Men's Christian Association of Columbus, Ohio v. Davis, 264 U.S. 47, at p. 50, 44 S.Ct. 291, at p. 292, 68 L.Ed. 558 (1924) where the 1918 Act provisions were concerned, the Supreme Court said:

"Congress was thus looking at the subject from the standpoint of the testator and not from the immediate point of view of the beneficiaries. It was intending to favor gifts for altruistic objects, not by specific exemption of those gifts *but by encouraging testators to make such gifts. Congress was in reality dealing with the testator before his death*. It said to him 'if you will make such gifts, we'll reduce your death duties and measure them not by your whole estate, but by that amount, *less what you give*." (emphasis supplied)

In Taft v. Commissioner, 304 U.S. 351, at p. 358, 58 S.Ct. 891, at p. 895, 82 L.Ed. 1393 (1938) where Section 303(a) (3) of the 1926 Act[11] was concerned, it was said:

"Subsection (3) *applies only to testamentary dispositions*. * * * The

only transfers required to be included in the gross estate are those made in contemplation of death or to take effect in possession or enjoyment at or after death. *In other words, only such transfers as are testamentary in character are to be included in the gross estate, and it follows that only those of that character are deductible under subsection (3)*." (emphasis supplied)

It must be noted at this point that the plaintiff concedes that no pertinent change has been made in the 1926 provisions in subsequent estate tax legislation, more particularly, Section 2055(a) of the 1954 Code here involved.

The rule declared by the Supreme Court has been summarized by the courts of appeals which have had occasion to apply it as follows:

"The right to a deduction depends upon what *a testator has willed* * * *."[12] (emphasis supplied)

"The statute under which the deduction was claimed is applicable to *testamentary dispositions only.* * * * Its purpose is to encourage *testators to make* charitable gifts."[13] (emphasis supplied)

This Court affirmed the Tax Court's[14] disallowance of a deduction under Section 812(d) of the 1939 Code, relevantly identical in text with Section 2055(a) of the 1954 Code, where bequests in the decedent's will to designated charities and religious institutions were void (by reason of a state law which made invalid charitable bequests where the decedent died within 30 days of the execution of his will) but the residuary

---

10. Paul, Federal Estate and Gift Taxation, § 12.02 n.5 (1942 ed.) states with reference to the substitution of the word "transfers" for "gifts":
"It was felt that the word 'gifts' had been misused and that the only gifts to be considered were those in contemplation of death. Hearings before Finance Committee on H.R. 8245, 67th Cong., 1st Sess., p. 287; Sen.Rep.No. 275, 67th Cong. 1st Sess., p. 25 (CB 1939–1, Part 2 p. 199)"

11. c. 27, 44 Stat. 72.

12. Levey v. Smith, 103 F.2d 643, 646 (7 Cir. 1939), cert. den. 308 U.S. 578, 60 S.Ct. 94, 84 L.Ed. 484. (Under the 1926 Act).

13. Burdick v. Commissioner, 117 F.2d 972, 974 (2 Cir. 1941), cert. den. 314 U.S. 631, 62 S.Ct. 63, 86 L.Ed. 506. (Under the 1926 Act).

14. Estate of William A. Carey, 9 T.C. 1047 (1947), aff'd sub nom. Marine National Bank of Erie v. Commissioner, 168 F.2d 400 (3 Cir. 1947).

legatees, nevertheless, directed payments of the bequests. The disallowance was premised on the ground that the payments to the charities and religious institutions "went to them through agreement of the residuary legatees *and not under the will of the testator.*" (emphasis supplied)

Our review of prior and present estate tax legislation supports the Government's contention that there have been no amendments to the provision here involved since the 1921 Act which have affected the meaning of the word "transfers" as construed by the Supreme Court and the lesser courts. Further, as earlier stated, there have been no substantive changes in Treasury Regulations relating to the mooted provision since the 1921 Act.

The sum of the decisional law and the Treasury Regulations is that a deduction may be allowed only for "transfers" to charities made by a decedent during his lifetime or by will; otherwise stated, only such transfers inter vivos as are testamentary in character are deductible.

These principles are well-settled:

"[T]he long and well-setted construction" of an act, plus its reenactment without change of "the established interpretation" are "most persuasive indications" that the judicial construction "has become part of the warp and woof of the legislation." Francis v. Southern Pacific Co., 333 U.S. 445, 450, 68 S.Ct. 611, 613, 92 L.Ed. 798 (1948).[15]

15. In United States v. Stowe-Woodward, Inc., 306 F.2d 678, 680–681 (1 Cir.1962), cert. den. 371 U.S. 949, 83 S.Ct. 503, 9 L.Ed.2d 498 (1963), it was recently held that a taxpayer could not challenge a 20-year old administrative interpretation of a revenue statute where Congress had during the intervening period made frequent amendments in the revenue laws but had not changed the section there involved.

16. In Massachusetts Mutual Life Insurance Co. v. United States, 288 U.S. 269, at p. 273, 53 S.Ct. 337, at p. 339, 77 L. Ed. 739 (1933) it was said:

Treasury Regulations "have acquired the force of law" where "we have unambiguous regulatory language, adopted by the Commissioner in the early days of federal income tax legislation, in continuous existence since that time, and consistently construed and applied by the courts on many occasions * * *." Cammarano v. United States, 358 U.S. 498, 510, 511, 79 S.Ct. 524, 531, 532, 3 L.Ed.2d 462 (1959).[16] Otherwise stated, Treasury Regulations consistently followed by the courts as well as by the Commissioner over a long period of years, coupled with reenactment of the construed legislation, "bespeaks congressional approval". Corn Products Refining Co. v. Commissioner, 350 U.S. 46, 53, 76 S.Ct. 20, 100 L.Ed. 29 (1955); United States v. Leslie Salt Co., 350 U.S. 383, 397, 76 S.Ct. 416, 100 L.Ed. 441 (1956).

"* * * Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons." Commissioner v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948).[17]

Applying the principles stated to the instant case we are of the opinion that the descent of property to a state under its intestacy laws is not a "transfer" within the meaning of Section 2055 (a). There was absent here the ingredient of a testamentary disposition—the decedent by no stretch of the imagina-

"This action [of Congress in re-enacting a statute] was taken with knowledge of the construction placed upon the section by the official charged with its administration. If the legislative body had considered the Treasury interpretation erroneous it would have amended the section. Its failure so to do requires the conclusion that the regulation was not inconsistent with the intent of the statute * * *."

17. Hess v. Commissioner, 271 F.2d 104, 107 (3 Cir. 1959).

tion could be said to have "made" the "transfer".

With respect to the plaintiff's contention that the deduction provision should be "liberally construed" in view of the "public policy" favoring charitable dispositions, it need only be said that tax exemptions are not granted by implication, Oklahoma Tax Commissioner v. United States, 319 U.S. 598, 606, 63 S.Ct. 1284, 87 L.Ed. 1612 (1943), and further, it is well-settled that statutory exemptions from estate taxes should be strictly construed against the taxpayer; that exemptions are the exception, are not favored and will not be presumed. Shedd's Estate v. Commissioner, 237 F.2d 345, 357–358 (9 Cir. 1956), cert. den. 352 U.S. 1024, 77 S.Ct. 590, 1 L.Ed.2d 596 (1957).[18]

For the reasons stated the judgment of the District Court will be affirmed.

[18.] In Taft v. Commissioner, 304 U.S. 351, at pp. 358–359, 58 S.Ct. 891, at p. 895, 82 L.Ed. 1393 (1938) the Court rejected the contention that "we should adopt a liberal construction of the Act [§ 303(a) (3) of the 1926 Revenue Act] to effectuate the intent of Congress even though the payments in question do not fall within the strict meaning of the words used."