119 T.C. No. 13

UNITED STATES TAX COURT

ESTATE OF FRANK ARMSTRONG, JR., DECEASED, FRANK ARMSTRONG III,
EXECUTOR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1118-98.              Filed October 29, 2002.

In 1991 and 1992, D gave stock to Cs and other
donees.  For gift tax purposes, D valued the stock at
$100 per share.  As a condition of receiving certain of
these gifts, Cs agreed to pay additional gift taxes
arising if the gifts of stock were later determined to
have a fair market value greater than $100 per share.
In 1993, D died.  Subsequently, R determined that D's
gifts of stock should be valued at $109 per share,
resulting in gift tax deficiencies which were paid by a
trust that D had established.  The total gift taxes
paid on D's 1991 and 1992 gifts of stock were
$4,680,284.  Cs paid none of these gift taxes.

D's estate and the trust sued for refunds of gift
taxes paid, claiming that Cs' obligations to pay
additional gift taxes as a condition of the gifts they
received reduced the value of the gifts.  The U.S.
Court of Appeals for the Fourth Circuit rejected the
refund claims, holding that Cs' obligations to pay
additional gift taxes were contingent and highly

speculative. <u>Estate of Armstrong v. United States</u>, 277 F.3d 490 (4th Cir. 2002).

1. <u>Held</u>: Pursuant to sec. 2035(c), I.R.C., D's gross estate includes the $4,680,284 in gift taxes paid by or on behalf of D with respect to his 1991 and 1992 gifts of stock. <u>Held</u>, <u>further</u>, the amount includable in D's gross estate pursuant to sec. 2035(c), I.R.C., is not reduced to take into account consideration allegedly received by D in connection with payment of the gift taxes.

2. <u>Held</u>, <u>further</u>, sec. 2035(c), I.R.C., does not violate due process under the Fifth Amendment.

3. <u>Held</u>, <u>further</u>, sec. 2035(c), I.R.C., does not violate equal protection requirements of the Fourteenth Amendment as encompassed by the Fifth Amendment.

4. <u>Held</u>, <u>further</u>, no deduction is allowable under sec. 2055(a), I.R.C., with respect to gift taxes included in D's gross estate pursuant to sec. 2035(c), I.R.C.

<u>Aubrey J. Owen</u> and <u>Stephen L. Pettler, Jr.</u>, for petitioner.

<u>Veena Luthra</u>, <u>Deborah C. Stanley</u>, and <u>Cheryl M.D. Rees</u>, for respondent.

OPINION

THORNTON, <u>Judge</u>: Respondent determined a $2,350,071 Federal estate tax deficiency with respect to the Estate of Frank Armstrong, Jr. (the estate). This case is before us on respondent's motion for partial summary judgment under Rule 121.[1]

---

[1] Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the date of decedent's death.

Respondent seeks summary judgment upon the following issues: (1) Whether gift taxes of $4,680,284 paid by or on behalf of Frank Armstrong, Jr. (decedent), on gifts made within 3 years of his death are includable in his gross estate; (2) whether decedent received partial consideration for the gifts so as to reduce the gifts' value and consequently the gift taxes includable in decedent's gross estate; (3) whether section 2035(c) violates the Due Process Clause of the Fifth Amendment of the U.S. Constitution; (4) whether section 2035(c) violates the equal protection requirements of the Fourteenth Amendment, as embodied in the Fifth Amendment; and (5) whether the estate may deduct under section 2055 Federal gift taxes paid on gifts that decedent made in 1991 and 1992. As discussed in detail below, we will grant respondent's motion.

Summary judgment may be granted under Rule 121(b) if the moving party shows there is no dispute as to any material fact and that a decision may be rendered as a matter of law; however, the factual materials and inferences to be drawn from them must be viewed most favorably for the party opposing the motion, who "cannot rest upon mere allegations or denials, but must set forth specific facts showing there is a genuine issue for trial." Brotman v. Commissioner, 105 T.C. 141, 142 (1995).

## Background

In a memorandum of law in support of its objection to respondent's motion for partial summary judgment, the estate states that it agrees, with limited exceptions, to the statement of facts contained in respondent's memorandum of law in support of the motion for partial summary judgment. The following factual summary is based on the undisputed portions of respondent's statement of facts, the parties' stipulations, the estate's admissions, the pleadings, and an affidavit produced by respondent with accompanying documents, to which the estate has not objected. This factual summary is set forth solely for purposes of deciding the motion for partial summary judgment; it does not constitute findings of fact. See Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).

### Decedent

Decedent was president and primary stockholder of National Fruit Product Co., Inc. (National Fruit), a closely held Virginia corporation engaged in the manufacture of applesauce, apple juice, and other fruit products. On July 29, 1993, decedent died. His domicile at death was in Winchester, Virginia. When the petition was filed, the executor's legal residence was in Winchester, Virginia.

Decedent's Divestiture of National Fruit Stock

In 1991, at the age of 91, decedent began a program to divest himself of his National Fruit stock. Decedent made gifts of some of his stock; National Fruit redeemed the remainder.

Decedent's Gifts of National Fruit Stock

On December 26, 1991, decedent gave 5,725 shares of National Fruit common stock to each of four children--Frank Armstrong III, William T. Armstrong, JoAnne A. Strader, and Gretchen A. Redmond (the donee children). At the same time, decedent gave 100 shares to each of 11 grandchildren.

On January 3, 1992, decedent made additional gifts of National Fruit common stock: Over 12,000 shares to each of the donee children (12,732 each to two children, 12,532 shares to another child, and 12,332 shares to the fourth child); another 100 shares to each of the 11 grandchildren; and 4,878 total shares to two trusts that he established that same day.

The Transferee Liability Agreement

Also on January 3, 1992, decedent and the donee children executed a transferee liability agreement (the transferee agreement). The transferee agreement stated that for gift tax purposes decedent would report the value of his 1991 and 1992 gifts of National Fruit stock as $100 per share. The transferee agreement stated that decedent was making the January 3, 1992, gifts to the donee children on the condition that they pay the

additional gift taxes (along with interest and related costs) arising "by reason of any proposed adjustment to the amount of [the] 1991 and 1992 gifts" by decedent of the National Fruit stock.

### Redemption of Decedent's Other National Fruit Shares

On December 26, 1991, National Fruit redeemed all of decedent's preferred stock for cash and a private annuity. On January 6, 1992, National Fruit redeemed decedent's remaining common stock in consideration for a $6,065,300 promissory note (the note) payable to decedent by National Fruit, with payment guaranteed by the donee children. On the same date, decedent established the Frank Armstrong, Jr. Trust for the Benefit of Frank Armstrong, Jr. (the trust), naming Frank Armstrong III as trustee. Decedent assigned the note to the trust. The terms of both the note and the trust provided for the payment of gift and income tax liabilities and related costs resulting from the 1991 and 1992 gifts and redemptions of decedent's National Fruit stock.

## 1991 and 1992 Gift Taxes

### Decedent's 1991 and 1992 Gift Tax Returns

On his 1991 and 1992 Federal gift tax returns, decedent reported his gifts of National Fruit stock, valued at $100 per share, resulting in reported gift tax liabilities of $1,229,483 and $3,027,090 for 1991 and 1992, respectively. With each gift

tax return, decedent submitted two checks in payment of the reported liabilities: For 1991, he submitted a $1,200,341 check drawn on the trust's bank account and a $29,142 check drawn on his personal bank account; for 1992, he submitted a $3,015,595 check drawn on the trust's bank account and a $11,495 check drawn on his personal bank account.

Respondent's Gift Tax Determinations

After decedent's death in 1993, respondent determined that decedent's 1991 and 1992 gifts of National Fruit stock had a value of $109 per share, rather than $100 per share as reported on the gift tax returns, resulting in gift tax deficiencies of $118,801 and $304,910 for 1991 and 1992, respectively. The estate consented to the immediate assessment and collection of these determined gift tax deficiencies.

Payment of the 1991 and 1992 Assessed Gift Tax Deficiencies

In December 1995, respondent received payment from the trust for the 1991 and 1992 assessed gift tax deficiencies and interest thereon. As of November 20, 1998, none of the donee children had paid any of decedent's gift tax liabilities, gift tax deficiencies, or interest with respect to decedent's gifts for any taxable year.

Refund Claims for Gift Taxes Paid

In April 1996, the estate and the trust filed separate, partially duplicative refund claims with respect to decedent's

1991 and 1992 gift tax liabilities.  The trust sought refunds of the $118,801 and $304,910 gift tax deficiencies assessed for 1991 and 1992, respectively.  The estate sought refunds of these same gift tax deficiencies plus the taxes originally paid with decedent's 1991 and 1992 gift tax returns.  The premise of each refund claim was that the donee children's alleged obligations to pay additional gift and estate taxes as a condition of the gifts they received from decedent reduced the gifts' value and the resulting gift taxes accordingly.  Respondent disallowed the refund claims.

The estate and the trust (collectively, the plaintiffs) filed a complaint in the U.S. District Court for the Western District of Virginia seeking a refund of the entire amount of gift taxes paid in 1991 and 1992.  The District Court granted the Government's motion for summary judgment, concluding that the donee children's asserted obligations to pay additional gift and estate taxes were "speculative" and did not reduce the value of the gifts; moreover, noting that the donee children never in fact paid the additional gift tax as called for in the transferee agreement despite the occurrence of the liability-triggering contingency, the District Court concluded that the donee children's asserted gift tax liabilities were "illusory." Armstrong ex rel. Armstrong v. United States, 132 F. Supp. 2d 421, 429 (W.D. Va. 2001), affd. sub nom. Estate of Armstrong v.

<u>United States</u>, 277 F.3d 490 (4th Cir. 2002). (Hereinafter, these proceedings in the District Court and the U.S. Court of Appeals for the Fourth Circuit are sometimes referred to collectively as the refund litigation.)

Affirming the District Court, the U.S. Court of Appeals for the Fourth Circuit concluded that the so-called net gift principle did not apply to reduce the value of the transferred stock because "the [donee] children's obligation to pay the additional gift taxes was both contingent and highly speculative." <u>Estate of Armstrong v. United States</u>, <u>supra</u> at 496. Furthermore, the Court of Appeals reasoned, even if the donee children's obligation to pay the additional gift tax were assumed not to be speculative, it was nevertheless "illusory" because the trust in fact paid the additional gift taxes pursuant to the terms of the trust agreement.[2] <u>Id.</u> For similar reasons, the Court of Appeals rejected the plaintiffs' argument that net gift principles should reduce the value of the gifts by the amount of estate taxes the donee children were obligated to pay on the gift taxes. <u>Id.</u> at 497-498. The Court of Appeals held that the plaintiffs were entitled to no refund of the gift taxes paid. <u>Id.</u> at 498.

---

[2] The U.S. Court of Appeals for the Fourth Circuit rejected, as being contrary to the undisputed facts, the taxpayers' argument that the trust's payment of the gift taxes constituted payment by decedent's children. <u>Estate of Armstrong v. United States</u>, 277 F.3d 490, 497 (4th Cir. 2002).

Estate Taxes

Decedent's Estate Tax Return

As previously noted, decedent died in 1993.  On Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, the estate reported no estate tax liability.  The estate excluded from the gross estate the $4,680,284 of gift taxes that decedent and the trust had paid on the gifts of National Fruit stock that decedent had made during the 3 years before his death.

Respondent's Determination

In the notice of deficiency issued October 20, 1997, respondent determined a $2,350,071 deficiency in the estate's taxes.[3]  In arriving at this determination, respondent increased

_____

[3] In January 1998, respondent issued separate notices of transferee liability to each of the donee children.  These notices stated that, as transferees of property (i.e., the 1991 and 1992 gifts of National Fruit Product Co., Inc. (National Fruit) stock), the donee children were each personally liable under sec. 6324(c) for decedent's unpaid Federal estate taxes to the extent of the value of property received.  The donee children challenged the notices of transferee liability in petitions filed in this Court (assigned docket Nos. 7267-98, 7269-98, 7270-98, and 7274-98).  In their consolidated cases in this Court, the donee children moved for partial summary judgment, asserting that they were not liable as transferees as a matter of law.  In Armstrong v. Commissioner, 114 T.C. 94, 100-102 (2000), this Court denied the donee children's motions for partial summary judgment, concluding that under sec. 2035(d)(3)(C) the value of the stock that decedent transferred to them was included in his gross estate for purposes of sec. 6324(a)(2) and that, consequently, the donee children were liable as transferees for the estate tax deficiency due from decedent's estate.  In their consolidated cases in this Court, the donee children continue to contest the amount of estate tax deficiency due from the estate and the amount of their personal liability.

decedent's taxable estate by the amount of gift taxes paid by or on behalf of decedent on gifts made within 3 years of his death ($4,680,284). Respondent also increased the amount of decedent's adjusted taxable gifts and total gift taxes payable to reflect his determination that decedent's 1991 and 1992 gifts of National Fruit stock should be valued at $109 per share instead of $100 per share, as reported by decedent on the 1991 and 1992 gift tax returns. Respondent also disallowed the estate's claimed deductions for certain administrative expenses.

## Discussion

### A. Gift Taxes Includable in Decedent's Estate

Respondent seeks summary judgment that under section 2035(c), decedent's gross estate includes $4,680,284 of gift taxes paid by or on behalf of decedent with respect to his 1991 and 1992 gifts of National Fruit stock.[4]

Section 2035(c) provides, in relevant part, that the gross estate includes the amount of any Federal gift tax paid "by the decedent or his estate on any gift made by the decedent or his

---

[4] In his motion for partial summary judgment, respondent seeks summary judgment on these two related issues: (1) The amount of gift taxes includable in decedent's estate under sec. 2035(c); and (2) whether the amount of gift taxes includable under sec. 2035(c) should be reduced by consideration that the estate alleges decedent received for the gifts or for payment of the gift taxes. Because the first issue subsumes the second, we address both issues together.

spouse * * * during the 3-year period ending on the date of the decedent's death."

In a legal memorandum filed with this Court on February 19, 2002, addressing the effect here of the decision of the U.S. Court of Appeals for the Fourth Circuit in the refund litigation, the estate concedes that it is "collaterally estopped from taking a position other than that $4,680,284 is the amount of gift taxes paid by or on behalf of the decedent for the gifts made in 1991 and 1992." On its face, this concession would appear dispositive in favor of respondent's motion for summary judgment on this issue. The estate contends otherwise.

The estate contends that the amount of gift taxes includable in decedent's gross estate under section 2035(c) should be reduced to take into account "consideration received by the decedent in connection with the payment of such gift taxes by him and on his behalf." The premise, as best we understand it, is that even if decedent received no consideration for the 1991 and 1992 gifts of National Fruit stock, there is nevertheless a factual issue as to whether decedent (or the estate) received "consideration" for paying the gift taxes thereon.[5] The estate

---

[5] As previously discussed, in affirming the U.S. District Court for the Western District of Virginia, the U.S. Court of Appeals for the Fourth Circuit expressly concluded that the donee children's "obligation to pay additional gift taxes was both speculative and illusory and did not reduce the value of the stock transferred to them." Estate of Armstrong v. United

(continued...)

contends that section 2043(a) requires such "consideration" to be netted from the gift taxes includable in decedent's gross estate under section 2035(c).

We disagree for several reasons.

<u>First</u>, the plain language of section 2035(c) requires the gross estate to be increased by gift taxes "paid * * * by the decedent or his estate on any gift made by the decedent or his spouse * * * during the 3-year period ending on the date of the decedent's death." Section 2035(c) does not provide for the netting of "consideration" received for the payment of gift taxes.

<u>Second</u>, section 2043(a), by its terms, applies to "transfers * * * described in sections 2035 to 2038, inclusive, and section

---

[5](...continued)
<u>States</u>, 277 F.3d at 497. The Court of Appeals noted that "the donee children have paid no gift taxes." <u>Id.</u> at 496. The estate contends that in reaching these conclusions, the Court of Appeals did not thereby actually decide that there was no consideration for decedent's 1991 and 1992 gifts; rather, the estate asserts, the Court of Appeals held only that the so-called net gift doctrine did not apply to reduce the amount of decedent's donative transfers. The distinction that the estate seeks to draw appears based more in semantics than substance. Even if we were to accept the distinction the estate seeks to draw, however, the fact would remain, as the estate concedes, that $4,680,284 is the amount of gift taxes paid by or on behalf of decedent for gifts that decedent made in 1991 and 1992. As discussed in more detail in the text above, that concession suffices for purposes of disposing of respondent's motion for summary judgment with respect to the application of sec. 2035(c).

2041".[6]  Section 2035(c) (unlike section 2035(a), for example), does not describe a "transfer" but merely requires that the gross estate be grossed up by the amount of gift taxes paid on gifts made within 3 years of the decedent's death.[7]

The estate suggests that even though section 2035(c) does not explicitly refer to a "transfer", it nevertheless must be understood to describe a "transfer" so as to implicate section 2043(a).  After all, the estate observes, the estate tax is a tax on the privilege of transfer.  Section 2035(c) requires payments of certain gift taxes to be included in the gross estate, the estate says.  Therefore, the estate concludes, section 2035(c), in describing these gift tax payments, must describe "transfers" within the meaning of section 2043(a).  We disagree.

---

[6] Sec. 2043(a) provides:

> SEC. 2043(a). In General.--If any one of the transfers, trusts, interests, rights, or powers enumerated and described in sections 2035 to 2038, inclusive, and section 2041 is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent.

[7] As discussed in more detail _infra_, this gross-up rule functions to eliminate certain disparities in the tax treatment of deathtime and lifetime transfers.

As the estate observes, the estate tax is sometimes characterized as a tax on the privilege of transferring property at death. See New York Trust Co. v. Eisner, 256 U.S. 345, 348-349 (1921); Knowlton v. Moore, 178 U.S. 41, 56 (1900) (1898 Federal tax on legacies was constitutional as resting on "the power to transmit, or the transmission from the dead to the living"). As the Supreme Court has made clear, however, this does not mean that the estate tax may be imposed only on "transfers". See Fernandez v. Wiener, 326 U.S. 340, 352 (1945) ("It is true that the estate tax as originally devised and constitutionally supported was a tax upon transfers. * * * But the power of Congress to impose death taxes is not limited to the taxation of transfers at death."); see also Tyler v. United States, 281 U.S. 497, 502 (1930); Bittker & Lokken, Federal Taxation of Income, Estates and Gifts, par. 120.1.2, at 120-6 (2d ed. 1993) (the transfer of property at death is a "sufficient condition--but not a necessary one--for a constitutional tax").

Technically, the Code imposes the estate tax on a single "transfer"--the "transfer of the taxable estate". Sec. 2001(a). The taxable estate is defined generally as the gross estate less allowable deductions. Sec. 2051. The gross estate includes, to the extent provided in various Code sections (including section 2035), the value at the time of a decedent's death of "all property, real or personal, tangible or intangible, wherever

situated."  Sec. 2031(a).  This does not mean, however, as the estate implies, that each constituent element of the gross estate, so defined, necessarily constitutes, depends upon, or presupposes a separate and distinct "transfer" of property.[8]

Third, it is not meaningful to speak of "consideration" received by decedent (or the estate) for payment of decedent's gift tax liabilities.  "'A consideration in its widest sense is the reason, motive, or inducement, by which a man is moved to bind himself by an agreement.'"  Black's Law Dictionary 301 (7th ed. 1999) (quoting Salmond, Jurisprudence 359 (10th ed. 1947)).  Decedent's obligation to pay gift taxes on his 1991 and 1992 gifts arose by operation of law and was unaffected by any agreement he might have made with the donee children or anyone else.[9]  Accordingly, any consideration he might have received in connection with any such agreement was necessarily for something

---

[8] For instance, as apropos of the case at hand and discussed in greater detail infra, the gross estate includes the amount of assets required to satisfy the estate tax liability even though those assets are ultimately unavailable for transfer by the decedent.

[9] As the Supreme Court stated in Diedrich v. Commissioner, 457 U.S. 191, 197 (1982) (holding that the donor of a net gift realizes taxable income to the extent the gift tax paid by the donee exceeds the donor's adjusted basis in the property given):

> When a gift is made, the gift tax liability falls on the donor under 26 U.S.C. § 2602(d).  When a donor makes a gift to a donee, a "debt" to the United States * * * is incurred by the donor.  Those taxes are as much the legal obligation of the donor as the donor's income taxes * * * [Fn. ref. omitted.]

other than his (or the estate's) payment of his gift tax liabilities.[10]

Fourth, the parties have stipulated that the donee children paid none of decedent's 1991 and 1992 gift tax liabilities--a fact specifically noted by the U.S. Court of Appeals for the Fourth Circuit in the refund litigation. Estate of Armstrong v. United States, 277 F.3d at 496 ("the donee children have paid no gift taxes"). The donee children's mere conditional promise to pay certain additional gift taxes that decedent might be determined to owe does not reduce the amount of decedent's gift taxes included in the gross estate under section 2035(c).

Fifth, in any event (and unsurprisingly in light of our previous observations) the estate has set forth no particular facts to show that decedent or the estate received or was entitled to receive "consideration" for payment of decedent's 1991 and 1992 gift taxes; the estate's mere allegations in this

---

[10] If we were to suspend disbelief and assume, for the sake of argument, that decedent received valuable "consideration" in exchange for his agreeing to pay his own gift tax liabilities, it would logically follow that decedent's gross estate should be increased to reflect the date-of-death value of this alleged consideration, thus offsetting the tax benefit that the estate seeks to obtain by netting this "consideration" against the gift taxes otherwise includable in the gross estate under sec. 2035(c).

regard are insufficient to show that there is a genuine issue for trial.[11]  See Brotman v. Commissioner, 105 T.C. at 142.

Accordingly, we shall grant respondent's motion for summary judgment that decedent's gross estate includes $4,680,284 of gift taxes paid by or on behalf of decedent with respect to his 1991 and 1992 gifts.

## B.  Constitutional Arguments

### 1.  Due Process

The estate contends that section 2035(c) violates due process under the Fifth Amendment, because its enactment created "a conclusive presumption regarding motive, in contravention of" Heiner v. Donnan, 285 U.S. 312 (1932).  The estate's argument is without merit.

Heiner v. Donnan, supra, involved a provision of the Revenue Act of 1926.  The statute provided that a decedent's gross estate included the value of any interest in property that the decedent had transferred, at any time, in contemplation of death.[12]

---

[11] In a legal memorandum filed with this Court on Mar. 21, 2002, the estate states:  "Even if we assume, as respondent would have us do, that the Refund Suit decided the issue of 'consideration provided by the donees of the gifts,' the issue of consideration to decedent from others than donees has not been litigated or decided."  The estate has set forth no particular facts, however, to show that decedent received any consideration from "others than donees".

[12] Under then-existing law, gifts in contemplation of death were included in the transferor's gross estate "to reach substitutes for testamentary dispositions and thus to prevent the
(continued...)

Revenue Act of 1926, ch. 27, sec. 302(c), 44 Stat. 70. The statute explicitly created an irrebuttable presumption that certain transfers made within 2 years of the decedent's death were in contemplation of death. The Supreme Court held that this irrebuttable presumption violated Fifth Amendment requirements of due process because it precluded "ascertainment of the truth" as to whether "the thought of death" was "the impelling cause of the transfer" so as to satisfy the circumstance upon which the tax "explicitly is based". Heiner v. Donnan, supra at 327-328.

Subsequently, Congress amended the tax laws to delete the conclusive presumption. Until 1976, however, transfers made "in contemplation of death" continued to be included in the gross estate. Certain transfers were presumed to be made "in contemplation of death" unless the executor could prove otherwise. Sec. 2035(a), I.R.C. 1954.

To eliminate the "considerable litigation" that had ensued from the prior rule regarding gifts in contemplation of death, the Tax Reform Act of 1976 (the 1976 Act), Pub. L. 94-455, sec. 2001(a)(5), (d)(1), 90 Stat. 1848, amended section 2035(a) to require inclusion in the gross estate of all gifts made within 3 years of the decedent's death, without regard to whether they

---

[12](...continued)
evasion of the estate tax." United States v. Wells, 283 U.S. 102, 117 (1931).

were made in contemplation of death (hereinafter, this is sometimes referred to as the 3-year rule).[13]

In Estate of Rosenberg v. Commissioner, 86 T.C. 980, 995-999 (1986), affd. without published opinion 812 F.2d 1401 (4th Cir. 1987), this Court rejected a contention that the 3-year rule violated substantive due process under the Fifth Amendment. This Court noted that in Mourning v. Family Publns. Serv., Inc., 411 U.S. 356, 377 (1973), the Supreme Court had stated that Heiner v. Donnan, supra, was inapplicable to a case involving a provision "intended as a prophylactic measure" rather than a conclusive presumption of determinative facts. Estate of Rosenberg v. Commissioner, supra at 989. Thus distinguishing Heiner v. Donnan, supra, this Court held that section 2035(a) involved a classification based upon "prophylactic" grounds and that the classification was constitutionally valid as bearing a rational relationship to the legitimate legislative goal of discouraging "the abuse of gift giving aimed at tax avoidance or gifts made as substitutes for testamentary dispositions". Id. at 996.

Similarly, in Estate of Ekins v. Commissioner, 797 F.2d 481, 485-486 (7th Cir. 1986), the U.S. Court of Appeals for the Seventh Circuit rejected a Fifth Amendment due process challenge

---

[13] In 1981, the 3-year rule of sec. 2035(a) was made generally inapplicable to estates of decedents dying after Dec. 31, 1981, except with respect to certain specified types of transfers. Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 424(c), 95 Stat. 317.

to the 3-year rule.  The court questioned whether the "irrebuttable presumption" doctrine as applied in Heiner v. Donnan, supra, had "any continued vitality."  Id. at 486.  The court stated:  "Even assuming that the doctrine is still good law, it is inapplicable to section 2035(a) since the statute on its face does not speak in terms of presumptions of fact, rebuttable or otherwise."  Id.  The court held the 1976 amendment to section 2035(a) "bore a rational relationship to a legitimate congressional purpose:  eliminating factbound determinations hinging upon subjective motives."  Id.

The 1976 amendment of section 2035(a) was part of a comprehensive reform of the estate and gift tax system.  Before 1976, the Federal gift tax and estate tax were essentially separate; gift tax rates were lower than estate tax rates.  Congress concluded that this dual transfer tax system created unwarranted disparities in the treatment of lifetime and deathtime transfers of wealth.  See Estate of Sachs v. Commissioner, 88 T.C. at 774-775.  The 1976 Act reduced these disparities by adopting unified estate and gift tax rates to be applied to cumulative lifetime and deathtime transfers.  See Staff of the Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, 1976-3 C.B. (Vol. 2) 1, 538.

Merely conforming the gift and estate tax rates, however, did not eliminate all tax incentives for lifetime transfers.  One

such incentive results from the fact that the estate tax base is broader than the gift tax base: assets that are used to pay gift taxes (and that are thereby effectively removed from the donor's gross estate) are not included in the gift tax base (i.e., gift taxes are "tax-exclusive"). Assets used to pay estate taxes, on the other hand, are included in the estate tax base (i.e., estate taxes are "tax-inclusive"). "Thus, even if the applicable transfer tax rates were the same, the net amount transferred to a beneficiary from a given pre-tax amount of property was greater for a lifetime transfer solely because of the difference in the tax bases." Id.

To reduce this disparity, the 1976 Act required, in new section 2035(c), that the decedent's gross estate be grossed up by the amount of gift tax paid by the decedent or his estate on gifts made by the decedent or his spouse within 3 years of death (hereinafter, this is sometimes referred to as the gross-up rule). The purpose of this amendment was described as follows:

> Since the gift tax paid on a lifetime transfer which is included in a decedent's gross estate is taken into account both as a credit against the estate tax and also as a reduction in the estate tax base, substantial tax savings can be derived under present law by making so-called "deathbed gifts" even though the transfer is subject to both taxes. To eliminate this tax avoidance technique, the committee believes that the gift tax paid on transfers made within 3 years of death should in all cases be included in the decedent's gross estate. This "gross-up" rule will eliminate any incentive to make deathbed transfers to remove an amount equal to the gift taxes from the transfer tax base.

\*     \*     \*     \*     \*     \*     \*

In determining the amount of the gross estate, the amount of gift tax paid with respect to transfers made within 3 years of death are [sic] to be includable in a decedent's gross estate. This "gross-up" rule for gift taxes eliminates any incentive to make deathbed transfers to remove an amount equal to the gift taxes from the transfer tax base. [H. Rept. 94-1380, at 12, 14 (1976), 1976-3 C.B. (Vol. 3) 735, 746, 748.]

Citing this legislative history, the estate argues that the gross-up rule of section 2035(c) is fundamentally different from the 3-year rule of section 2035(a), which was held to be constitutional in Estate of Rosenberg v. Commissioner, supra, and Estate of Ekins v. Commissioner, supra. The estate contends that, unlike the 3-year rule of section 2035(a), the gross-up rule of section 2035(c) is not "prophylactic" but instead "[ingrains] an element of motive with respect to gift tax paid on lifetime transfers", because "Congress based its enactment of sec. 2035(c) upon the elimination of a tax avoidance technique by deathbed gifts." The result, the estate contends, is that section 2035(c) "created a conclusive presumption regarding motive, leaving taxpayers no opportunity to present evidence to the contrary." Therefore, the estate concludes, section 2035(c) is unconstitutional under Heiner v. Donnan, 285 U.S. 312 (1932). We disagree.

In Estate of Rosenberg v. Commissioner, 86 T.C. at 995-996, this Court observed:

The approach under which the Supreme Court now reviews congressional legislation is "a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one".  Schweiker v. Wilson, 450 U.S. 221, 234 (1981) (reviewing SSI program under equal protection component of Fifth Amendment).  Legislative classifications will be upheld so long as they bear a "rational relation to a legitimate legislative goal", Weinberger v. Salfi, 422 U.S. 749, 772 (1975); "advances legitimate legislative goals in a rational fashion", Schweiker v. Wilson, 450 U.S. at 234; have "some 'reasonable basis'", Dandridge v. Williams, 397 U.S. 471, 485 (1970), quoting Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78 (1911); "have support in considerations of policy and practical convenience", Steward Machine Co. v. Davis, 301 U.S. 548, 584 (1937); do not achieve their purposes in a patently "arbitrary or irrational way", U.S. Railroad Retirement Bd. v. Fritz, 449 U.S. 166, 177 (1980); Duke Power Co. v. Carolina Env. Study Group, 438 U.S. 59, 83 (1978); and do not "manifest a patently arbitrary classification utterly lacking in rational justification", Flemming v. Nestor, 363 U.S. 603, 611 (1960).

See also Reno v. Flores, 507 U.S. 292, 303 (1993) (rejecting a substantive due process challenge to a regulation that was "rationally connected to a governmental interest * * * and * * * not * * * excessive in relation to that valid purpose"); Leikind v. Schweiker, 671 F.2d 823, 825 (4th Cir. 1982) ("The standard of review under substantive due process is that the statute must be upheld if there is any rational basis for the classification made therein.") (citing Usery v. Turner Elkhorn Mining Co., 428 U.S. 1 (1976)).

Section 2035(c) bears a rational relation to the legitimate legislative goal of eliminating incentives to make "deathbed

transfers" to remove assets used to pay gift taxes from the transfer tax base. That some gifts made within 3 years of a decedent's death might not have been made from the donor's deathbed or with a tax-avoidance motive "does not strip the legislative scheme of its validity. This kind of imperfection is inevitable whenever a line is drawn by the legislature." Estate of Rosenberg v. Commissioner, supra at 996 (citing Mathews v. Diaz, 426 U.S. 67, 183 (1976)).

Under the language of section 2035(c), the donor's motive in making the gifts that trigger the gross-up rule is immaterial. Like the 3-year rule, the gross-up rule makes no reference to any presumption of fact, rebuttable or otherwise. Like the 3-year rule, the gross-up rule is a prophylactic rule aimed at tax avoidance. Consequently, whatever continued vitality it may have, Heiner v. Donnan, supra, is inapplicable here, as it was in Estate of Rosenberg v. Commissioner, 86 T.C. 980 (1986), and Estate of Ekins v. Commissioner, 797 F.2d 481 (7th Cir. 1986).

Accordingly, we shall grant respondent's motion for summary judgment on this issue.

2. <u>Equal Protection</u>

The estate contends that section 2035(c) is unconstitutional because it violates equal protection requirements of the Fifth Amendment.[14]

On its face, section 2035(c) does not differentiate between any classes of persons (excepting perhaps the living and the dead). The estate contends, however, that section 2035(c) nevertheless results in unequal treatment for married persons and single persons. In support of this argument, the estate focuses on the following statement of legislative intent with respect to the enactment of section 2035(c) in the 1976 Act:

> The amount of gift tax subject to this rule [i.e., the gross-up rule] would include tax paid by the decedent or his estate on any gift made by the decedent or his spouse after December 31, 1976. It would not, however, include any gift tax paid by the spouse on a gift made by the decedent within 3 years of death which is treated as made one-half by the spouse, since the spouse's payment of such tax would not reduce the decedent's estate at the time of death. [H. Rept. 98-1380, <u>supra</u> at 14, 1976-3 C.B. (Vol. 3) at 748.]

The estate contends that the effect of this statement of legislative intent is that--

> payment of estate tax on gift taxes is avoided if the person paying the gift tax is the spouse of the donor, elects gift-splitting with the donor, and lives beyond three years of when the donor made the gift. The gift-splitting election referenced by Congress in the

---

[14] The Fifth Amendment, as applied to Federal legislation, encompasses the equal protection requirements of the Fourteenth Amendment. <u>Weinberger v. Wiesenfeld</u>, 420 U.S. 636, 638 n.2 (1975); <u>Johnson v. Robison</u>, 415 U.S. 361, 364-365 n.4 (1974).

Committee Reports can be made after death of the donor spouse, per I.R.C. § 2513(a)(1) and I.R.C. § 2513(b)(2), and the non-donor survivor is jointly and severally liable for the gift tax per I.R.C. § 2513(d). Thus, a terminally-ill person may intentionally make a "deathbed gift" of taxable value to third parties for tax avoidance purposes, hoping that his young and healthy spouse (and beneficiary of the remainder of his estate) will pay the gift taxes and thus effectively remove the gift tax from his tax transfer base, and her transfer tax base as well if she lives for 3 years from the time of his gifts. By basing the inclusion under section 2035(c) on the person who pays the gift tax and then dies within 3 years, rather than the person who makes the gift, Congress intentionally created a situation where a single individual does not have rights and protection equal to those of a married individual.

We are unimpressed with the estate's argument, which brings to mind Justice Holmes's description of an equal protection claim as "the usual last resort of constitutional arguments". Buck v. Bell, 274 U.S. 200, 208 (1927). The committee report quoted above merely describes the coordination of sections 2035(c) and 2513. The coordination of these two sections does not, in and of itself, result in favored treatment to married donors.[15] As previously discussed, the purpose of the gross-up rule is to reduce disparities in the taxation of lifetime and deathtime transfers by effectively taxing gifts made within 3 years of death on a tax-inclusive basis (rather than on the tax-exclusive basis that normally pertains to gifts), thereby ensuring that assets used to pay gift taxes on these gifts do not escape the

---

[15] The estate does not argue that the gift-splitting provisions of sec. 2513 are per se unconstitutional.

transfer tax base.  If, as the estate suggests, the gross-up rule results in a smaller increase to the gross estate of a married donor who used gift-splitting techniques than to the gross estate of a single donor who made identical gifts but lacked any gift-splitting option, it is only because the married donor has in fact paid fewer gift taxes with respect to the gifts. Consequently, fewer assets having been removed from the married donor's transfer tax base, a correspondingly smaller gross-up of the married donor's gross estate is required to counteract this erosion of the married donor's transfer tax base, consistent with the legislative purpose of section 2035(c).

In sum, we are unpersuaded by the estate's argument that the coordination of sections 2035(c) and 2513, as described in the legislative history, results in preferential treatment to married donors.[16]

---

[16] In any event, if we were to undertake an analysis of the differing tax treatments that might obtain for married donors and single donors as the result of interaction of sec. 2035(c) and other Code provisions, it is not apparent why we should limit this analysis, as the estate does, to the interaction of secs. 2035(c) and 2513, without considering comprehensively the possible interactions of sec. 2035(c) and the myriad other Code sections that differentiate married from unmarried individuals. Cf. Ingalls v. Commissioner, 40 T.C. 751 (1963) (upholding pre-1981 version of sec. 2035(a) as constitutional when applied to a widow whose gift tax exemption, used to reduce gift taxes on a split gift, was not reinstated--and therefore effectively wasted--when her husband's portion was included in his gross estate), affd. 336 F.2d 874 (4th Cir. 1964).

Even if we were to assume, however, for the sake of argument, that the statute might benefit married donors as the estate posits, such differential treatment would not violate constitutional requirements of equal protection.  In FCC v. Beach Communications, Inc., 508 U.S. 307, 313-314 (1993), the Supreme Court observed:

> Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.  In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.  Where there are "plausible reasons" for Congress' action, "our inquiry is at an end."  This standard of review is a paradigm of judicial restraint. * * * [Citations omitted.]

See also Regan v. Taxation with Representation, 461 U.S. 540, 547 (1983) (statutory classifications are generally valid "if they bear a rational relation to a legitimate governmental purpose"); Peterson Marital Trust v. Commissioner, 102 T.C. 790, 808-811 (1994) (imposition of generation-skipping transfer tax does not violate equal protection), affd. 78 F.3d 795 (2d Cir. 1996).

The statutory provisions at issue here do not proceed along suspect lines or infringe upon the right to make marital decisions or any other fundamental constitutional right.  Cf. Zablocki v. Redhail, 434 U.S. 374, 383, 386 (1978) (although the right to marry is "of fundamental importance", the State may

legitimately impose "reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship"); Califano v. Jobst, 434 U.S. 47, 58 (1977) (Social Security classifications that had a tangential impact upon a marital decision did not violate due process).  As previously discussed, section 2035(c) is rationally related to a legitimate governmental purpose.  The estate's suggestion that the Constitution requires married persons and single persons to be taxed identically is refuted by a long line of cases.  See, e.g., Ensminger v. Commissioner, 610 F.2d 189 (4th Cir. 1979), affg. T.C. Memo. 1977-224; Mapes v. United States, 217 Ct. Cl. 115, 576 F.2d 896, 904 (1978) ("there cannot be a 'marriage neutral' tax system"); DeMars v. Commissioner, 79 T.C. 247, 250-251 (1982) (requiring married persons to combine their adjusted gross incomes to determine eligibility for disability income exclusion has a rational basis); Druker v. Commissioner, 77 T.C. 867, 872-873 (1981) ("the differences in exposure to tax liability between married and single persons do not rise to the level of an impermissible interference with the enjoyment of the fundamental right to marry or remain married"), affd. on this issue and revd. in part 697 F.2d 46 (2d Cir. 1982); Kellems v. Commissioner, 58 T.C. 556 (1972) (finding that geographic equalization of taxpayers in community and noncommunity property States, as well as greater financial burdens of married persons, constitutes a

rational basis for classifying and distinguishing taxpayers), affd. per curiam 474 F.2d 1399 (2d Cir. 1973); Mueller v. Commissioner, T.C. Memo. 2000-132 ("We have consistently denied constitutional challenges to marital classifications in the tax code."), affd. without published opinion 87 AFTR 2d 2052, 2001-1 USTC par. 50,391 (7th Cir. 2001); Brady v. Commissioner, T.C. Memo. 1983-163 ("we find no constitutional violation * * * in the disparate Federal tax treatment of married and single individuals"), affd. without published opinion 729 F.2d 1445 (3d Cir. 1984).

Accordingly, we shall grant respondent's motion for summary judgment on this issue.

## C. Claimed Deduction Under Section 2055 for Gift Taxes Paid

Section 2055(a) permits a deduction from the gross estate for "the amount of all bequests, legacies, devises, or transfers * * * to or for the use of the United States * * * for exclusively public purposes". Section 20.2055-1(a), Estate Tax Regs., provides:

> A deduction is allowed under section 2055(a) from the gross estate of a decedent who was a citizen or resident of the United States at the time of his death for the value of property included in the decedent's gross estate and transferred by the decedent during his lifetime or by will--
>
> > (1) To or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes;

The estate argues that pursuant to this regulation it is entitled to deduct the $4,680,284 of Federal gift taxes paid on account of gifts decedent made in 1991 and 1992. We disagree.

As previously indicated, $423,711 of the total $4,680,284 of gift taxes was paid after decedent's death pursuant to respondent's determination of deficiencies in decedent's 1991 and 1992 gift taxes. These postdeath gift tax payments do not represent amounts "transferred by the decedent during his lifetime or by will" within the meaning of the regulation, since they were neither lifetime transfers nor testamentary dispositions. Id.; see Taft v. Commissioner, 304 U.S. 351, 358 (1938); Senft v. United States, 319 F.2d 642, 644 (3d Cir. 1963); Burdick v. Commissioner, 117 F.2d 972, 974 (2d Cir. 1941), affg. Nicholas v. Commissioner, 40 B.T.A. 1040 (1939); Estate of Pickard v. Commissioner, 60 T.C. 618, 622 (1973), affd. without published opinion 503 F.2d 1404 (6th Cir. 1974).[17]

More fundamentally, payments of decedent's gift taxes-- either during his lifetime or after his death--do not represent "transfers * * * for exclusively public purposes" within the meaning of section 2055(a)(1). The gift tax payments were not

_____

[17] With respect to respondent's motion for partial summary judgment, the parties have not raised and we do not reach any issue as to whether the $423,711 of postdeath gift tax payments is deductible as "Unpaid gift taxes on gifts made by a decedent before his death" as described in sec. 20.2053-6(d), Estate Tax Regs.

"motivated by a philanthropic impulse" or by an intention to "make a contribution to the United States." Markham v. Commissioner, 39 B.T.A. 465, 471 (1939) (disallowing a charitable deduction claimed as a contribution for the use of the United States for moneys the taxpayer expended in obtaining evidence to be used in a criminal prosecution). Rather, the gift tax payments were made for the entirely private purpose of satisfying decedent's gift tax liabilities. Just as "not every payment to an organization which qualifies as a charity is a charitable contribution", Estate of Wood v. Commissioner, 39 T.C. 1, 6 (1962), not every payment to a governmental entity qualifies as a transfer for exclusively public purposes under section 2055(a)(1), cf. Continental Ill. Natl. Bank & Trust Co. v. United States, 185 Ct. Cl. 642, 403 F.2d 721 (1968) ("It seems to us that the word 'public' [as used in section 2055(a)(1)] * * * envisions gifts to domestic governmental bodies"); Osborne v. Commissioner, 87 T.C. 575 (1986) (disallowing a charitable deduction for a taxpayer's transfers to a municipality of certain drainage facilities, to the extent the facilities improved his own property).

The legislative history indicates that Congress intended the section 2055(a) deduction to apply only to donative transfers. Section 2055(a) originated in section 403(a)(3) of the Revenue Act of 1918, ch. 18, 40 Stat. 1098, which allowed a deduction

from the gross estate for "all bequests, legacies, devises, or gifts" to a qualifying recipient.  (Emphasis added.)

The Revenue Act of 1921, ch. 136, sec. 403(a)(3), 42 Stat. 279, substituted for the word "gifts" the phrase "transfers, except bona fide sales for a fair consideration in money or money's worth, in contemplation of or intended to take effect in possession or enjoyment at or after the decedent's death".  The purpose of the 1921 amendment was to make "clear that gifts by decedent during his lifetime for public, religious, charitable, scientific, literary, educational, or other benevolent purposes are not deductible where the value of the property given is not required under the law to be included in * * * [the decedent's] gross estate."  S. Rept. 275, 67th Cong., 1st Sess. (1921), 1939-1 C.B. (Part 2) 181, 199; see Senft v. United States, supra at 644-645.[18]  The effect of the 1921 amendment, then, was to

_____

[18] Before 1924, there was no gift tax.  There was an estate tax, however, and it required inclusion in the gross estate of transfers "in contemplation of or intended to take effect in possession or enjoyment at or after * * * [a decedent's] death * * *, except in case of a bona fide sale for a fair consideration in money or money's worth."  Revenue Act of 1918, ch. 18, sec. 402(c), 40 Stat. 1097.  This provision gave rise to the wording of the 1921 amendment, as described in the text above.  In hearings before the Senate Committee on Finance, Dr. T.S. Adams, tax advisor, U.S. Treasury Department, had recommended the 1921 amendment, explaining its purpose as follows:

> [The 1918 Act authorizes] deductions on account of
> bequests, legacies, devises, or gifts.  That word
> "gift" has been misused * * *; the only gifts which

(continued...)

restrict the types of gifts for which a deduction from the gross estate was allowed, rather than to allow a deduction for nondonative transfers.

Since 1921, all versions of section 2055(a) and its predecessors have referred to "bequests, legacies, devises, or transfers".[19]  As the Court of Appeals for the Third Circuit has

---

[18](...continued)
should be affected are gifts in contemplation of death. Therefore, the only gifts which should be deducted are gifts in contemplation of death. * * *

*     *     *     *     *     *     *

The thought is this:  Why should you give a man a deduction from the gross estate of gifts?  What kind of gifts do you mean?  The only gift that should go in there is a gift that is taxable.

*     *     *     *     *     *     *

The wording follows the designation of the kind of gift, as shown in the statute.  You should use the same language.  [Hearings on H.R. 8245 Before the Senate Comm. on Finance, 67th Cong., 1st Sess. 287 (1921)].

[19] In 1926, the phrase that until then had followed "transfers"--namely, "except bona fide sales for a fair consideration in money or money's worth, in contemplation of or intended to take effect in possession or enjoyment at or after the decedent's death"--was deleted.  At the same time, a new limitation was added in the same paragraph, providing:  "The amount of the deduction under this paragraph for any transfer shall not exceed the value of the transferred property required to be included in the gross estate".  Revenue Act of 1926, ch. 27, sec. 303(a)(3), 44 Stat. 72.  (This limitation survives almost verbatim in current sec. 2055(d).)  These 1926 amendments were in the nature of conforming amendments occasioned by a provision of the same act modifying the definition of the gross estate so as to include all transfers made within 2 years of the decedent's death regardless of whether made in contemplation of
(continued...)

observed:  "The word 'gifts' as used in the 1918 Act and the word 'transfers' used in later revenue acts have been construed in their setting by the Supreme Court of the United States and given identical effect."  Senft v. United States, 319 F.2d at 645 (citing Taft v. Commissioner, 304 U.S. at 358, and YMCA v. Davis, 264 U.S. 47, 50 (1924)).

Clearly, the payments of decedent's Federal gift taxes, either during his lifetime or after his death, do not represent donative transfers, nor were they for exclusively public purposes.  Accordingly, the estate is entitled to no deduction under section 2055(a) for the gift tax payments.

The estate acknowledges that "allowing a charitable deduction would frustrate the intent of Congress in enacting section 2035(c)" by effectively negating the effect of the gross-up rule.  The estate suggests, however, that Congress must have intended this peculiar distortion of the statutory framework, as demonstrated by its failure to make "conforming provisions" to section 2055(a) when it enacted section 2035(c).  We disagree. The simpler explanation is that the estate's interpretation of section 2055(a) has long been understood to be incorrect.

---

[19](...continued)
death.  See H. Rept. 1, 69th Cong., 1st Sess. (1925), 1939-1 C.B. (Part 2) 315, 325.

Accordingly, we shall grant respondent's motion for partial summary judgment.  To reflect the foregoing,

An appropriate order

will be issued.